**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**(Houston Division)**

| | | |
|---|---|---|
| **MEHDI CHERKAOUI** | ) | |
| **Individually and on behalf of his two** | ) | |
| **minor children** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 4:26-cv-1675** |
| | ) | |
| **KEN PAXTON, in his official capacity as** | ) | |
| **Attorney General of Texas;** | ) | |
| **KELLY HANCOCK, in his official capacity** | ) | |
| **as Acting Comptroller of Public Accounts** | ) | |
| **of the State of Texas; and** | ) | |
| **MIKE MORATH, in his official capacity as** | ) | |
| **Commissioner of Education of the State of** | ) | |
| **Texas** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING**
**ORDER, PRELIMINARY AND PERMANENT INJUNCTION, AND**
**DAMAGES UNDER 42 U.S.C. § 1983**

COMES NOW Plaintiff Mehdi Cherkaoui Individually and on behalf of his

two minor children and files this complaint for Declaratory Relief, Temporary

Restraining Order, Preliminary And Permanent Injunction challenging the

constitutionality of Defendants' decision to exclude Islamic private schools from the

TEFA program and alleges as follows:

**I. INTRODUCTION**

1. This civil-rights action challenges Defendants' ongoing exclusion and

categorical disqualification of accredited Islamic private schools from participation

in the Texas Education Freedom Accounts ("TEFA") program, a publicly funded education savings account and school choice program enacted by the Texas Legislature in 2025[1].

2.  TEFA is structured as a generally available, religiously neutral public benefit program that provides approximately $10,474 per eligible student for tuition, fees, and educational expenses at private schools—including religious schools—selected by parents.

3.  Since TEFA's inception, Defendants have systematically targeted Islamic schools for exclusion based on their religious identity, perceived "Islamic ties," and alleged connections to organizations Governor Abbott has designated as "foreign terrorist" or "transnational criminal" entities—even where those schools are fully accredited, satisfy all statutory eligibility criteria, and have no actual connection to terrorism or unlawful activity[2].

4.  Houston Qur'an Academy Spring ("HQA Spring"), a Cognia-accredited Islamic K–12 school in Harris County serving Plaintiff's two minor children, meets every neutral statutory criterion for TEFA participation but has been excluded from the state's list of approved schools solely because of its Islamic religious identity and the Comptroller's application of impermissible religious gerrymanders.

5.  In December 2025, Acting Comptroller Kelly Hancock requested Attorney General Ken Paxton's legal opinion on whether the Comptroller could disqualify

---

[1] https://educationfreedom.texas.gov/

[2] https://www.fox4news.com/news/texas-democrats-accuse-comptroller-excluding-islamic-schools-from-voucher-program

Cognia-accredited Islamic schools that had "hosted publicly advertised events organized" by the Council on American-Islamic Relations ("CAIR"), which Governor Abbott designated as a "foreign terrorist organization" and "transnational criminal organization" in November 2025.

6.  On January 23, 2026, Attorney General Paxton issued Opinion No. KP-0509, confirming that the Comptroller has "full, exclusive statutory authority" to exclude schools from TEFA if they allegedly violate "other relevant laws," including laws prohibiting material support to foreign terrorist organizations or restricting foreign adversary ownership—and stated that the Comptroller's Office "has always possessed exclusive authority under the TEFA framework to stop any school illegally tied to terrorists or foreign adversaries from accessing taxpayer dollars."[3]

7.  Paxton's public statement accompanying the opinion declared: "Let me be crystal clear: Texans' tax dollars should never fund Islamic terrorists or America's enemies.... There is no question that the Comptroller's Office is statutorily charged with ensuring that our school choice program is protected from abuse by terrorists or the Chinese Communist Party." *Id*.

8.  As a direct result of this coordinated policy, not a single accredited Islamic private school has been approved to participate in TEFA—despite the approval of hundreds of other private schools statewide, including numerous Christian schools—effectively barring Muslim families like Plaintiff's from accessing over

---

[3] See Exhibit A

$20,000 per year in publicly funded educational benefits solely because of their religious faith and school choice.

9.   TEFA applications for the 2026–27 school year opened on February 4, 2026, and the application period closes on March 17, 2026—less than three weeks from the filing of this Complaint. Plaintiff's children are individually eligible, but Plaintiff cannot complete an application directing funds to HQA Spring because HQA Spring is not listed among the state's approved schools.

10.   Plaintiff faces immediate and irreparable injury: unless HQA Spring is restored to eligibility and added to the approved school list before March 17, 2026, Plaintiff will lose over $20,000 in TEFA funding for the entire 2026–27 school year and will suffer ongoing violation of his First and Fourteenth Amendment rights. This harm cannot be remedied by money damages and requires emergency equitable relief.

11.   Defendants' policies and actions violate the Free Exercise Clause, Establishment Clause, Equal Protection Clause, and Due Process Clause of the First and Fourteenth Amendments, both facially and as applied, and constitute religious discrimination actionable under 42 U.S.C. § 1983.

12.   Plaintiff seeks emergency temporary restraining order and preliminary and permanent injunctive relief to halt Defendants' religious discrimination before the March 17, 2026, TEFA application deadline, along with declaratory relief, nominal damages, and attorneys' fees.

## II. JURISDICTION AND VENUE

13.  This action arises under the Constitution and laws of the United States, specifically the First and Fourteenth Amendments and 42 U.S.C. § 1983.

14.  The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

15.  Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57 and 65.

16.  Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because Plaintiff resides in Harris County, HQA Spring is located in Harris County, and a substantial part of the events giving rise to this action occurred in this District.

## III. PARTIES

17.  Plaintiff Mehdi Cherkaoui is an adult resident of Harris County, Texas, and a practicing Muslim. He is the father of two minor children who attend Houston Qur'an Academy Spring, a Cognia-accredited Islamic K–12 school in the Houston area.

18.  Plaintiff's children reside in Texas, are eligible to attend Texas public schools, and satisfy all statutory student-eligibility criteria for TEFA; when Plaintiff accesses the TEFA portal at educationfreedom.texas.gov, the system confirms that his children are individually eligible for TEFA funding.

19.   Plaintiff pays approximately $17,910 per year in tuition for his two children to attend HQA Spring and wishes to apply for TEFA funds to help offset these educational costs. He is unable to do so because HQA Spring does not appear on the Comptroller's list of approved TEFA participating schools.

20.   Defendant Kelly Hancock is the Acting Comptroller of Public Accounts of the State of Texas. Pursuant to Texas Education Code § 29.359 and related provisions, he is charged with administering TEFA, including determining private school eligibility, processing school applications, and maintaining the list of approved schools from which parents may select. He is sued in his official capacity only.

21.   Defendant Ken Paxton is the Attorney General of the State of Texas. On January 23, 2026, he issued Opinion No. KP-0509 in response to Comptroller Hancock's request, affirming the Comptroller's "exclusive authority" to exclude schools from TEFA based on alleged violations of laws regarding foreign terrorist organizations and foreign adversaries, and publicly declaring that "Texans' tax dollars should never fund Islamic terrorists or America's enemies." He is sued in his official capacity only.

22.   Defendant Mike Morath is the Commissioner of Education of the State of Texas. He oversees Texas education policy and works with the Comptroller's Office regarding private school accreditation standards and program conditions for TEFA participation. He is sued in his official capacity only.

## IV. FACTUAL ALLEGATIONS

### A.    TEFA's Statutory Framework as a Generally Available Benefit

24.  In 2025, the Texas Legislature enacted Senate Bill 2, codified at Texas Education Code Chapter 29, Subchapter H, establishing the Texas Education Freedom Accounts program.

25.  TEFA provides Education Savings Accounts funded by state tax revenues, with grants of approximately $10,474 per eligible student for the 2026–27 school year (higher amounts for special-needs students), which parents may use to pay for private school tuition, fees, textbooks, tutoring, curriculum materials, standardized testing, and other approved educational expenses.

26.   Student eligibility is based on residence in Texas, grade level, and eligibility to attend a Texas public school; participation is open to all eligible students on a religiously neutral basis.

27.   Private schools wishing to participate must satisfy requirements set forth in Texas Education Code § 29.358(b), including:

> a. Location in Texas;
>
> b. Accreditation by an accrediting agency recognized by the Texas Private School Accreditation Commission ("TEPSAC"), such as Cognia;
>
> c. Continuous operation for at least two consecutive school years;
>
> d. Administration of a nationally norm-referenced assessment to participating students in grades 3–12; and
>
> e. Compliance with applicable health, safety, and other laws.

28.  TEFA is explicitly open to religious schools. The statute and implementing guidance emphasize "strong religious liberty and private school autonomy" protections and do not authorize exclusion based on religious denomination or identity.

29.  Texas Education Code § 29.358(c) provides that a participating private school "is not an agent of the state or federal government" and retains autonomy over admissions, curriculum, governance, and employment—provisions designed to protect private religious schools from state entanglement.

30.  Parents, not the state, select the private school their children will attend and direct TEFA funds; accordingly, the program operates as a true private-choice mechanism in which funds reach religious schools only as the result of the independent decisions of individual families.

31.  Under the statutory framework, once a school satisfies the neutral accreditation and operational criteria in § 29.358(b), it is eligible to participate absent disqualification under "other relevant law."

**B.    HQA Spring's Accreditation and Statutory Eligibility**

32.  Houston Qur'an Academy Spring ("HQA Spring") is a full-time Islamic K–12 school located in Harris County, Texas, serving students from early childhood through high school.

33.  HQA Spring is accredited by Cognia, a nationally recognized K–12 accrediting body and one of the nineteen accrediting agencies approved by the Texas

Private School Accreditation Commission for purposes of TEFA and other Texas private school requirements.

34. HQA Spring has been in continuous operation for more than two consecutive school years, offers a full academic curriculum aligned with state and national standards, and administers standardized assessments.

35. HQA Spring's accreditation, operational history, and educational program satisfy each of the neutral statutory criteria set forth in Texas Education Code § 29.358(b) for TEFA participation.

36. HQA Spring has no connection to terrorism, provides no material support to any foreign terrorist organization, is not owned or controlled by any foreign adversary, and does not violate any federal or Texas law restricting such conduct.

37. On information and belief, HQA Spring has hosted or permitted use of its facilities for community events, including educational "Know Your Rights" presentations open to parents and students regarding civil rights and legal protections available under U.S. law—the type of civic engagement and community service routinely hosted by religious institutions of all denominations.

### C.  The Comptroller and Attorney General's Coordinated Exclusion of Islamic Schools

38. Beginning in December 2025, shortly after private schools began applying for TEFA participation, Acting Comptroller Hancock publicly announced concerns about "Islamic and Chinese ties" among applicants and signaled his intent to block or scrutinize schools with alleged connections to Islamic organizations.

39.  On December 12, 2025, Hancock formally requested an opinion from Attorney General Paxton, asking:

> "May the Comptroller's Office determine, under the 'other relevant law' provision in Senate Bill 2, that a private school is ineligible to participate in TEFA if it has ties to entities designated under Texas law as foreign terrorist organizations, transnational criminal organizations, or foreign adversaries?"

40.  Hancock's request specifically referenced "potential TEFA applicants accredited through a TEPSAC-approved agency, Cognia," that "are based at an address that have hosted publicly advertised events organized" by CAIR, which Governor Abbott had designated as a foreign terrorist organization one month earlier.

41.  Hancock's request stated: "The people of Texas deserve the highest assurance that no taxpayer dollars will be used, directly or indirectly, to support institutions with ties to a foreign terrorist organization, a transnational criminal network, or any adversarial foreign government."

42.  On January 23, 2026, Attorney General Paxton issued Opinion No. KP-0509, holding that:

> a. The Comptroller has "full, exclusive statutory authority" to determine school eligibility for TEFA;
> b. The phrase "other relevant law" in Senate Bill 2 incorporates existing federal and state laws prohibiting material support to foreign terrorist organizations and restricting ownership or control by transnational criminal organizations or foreign adversaries;
> c. Schools that violate these incorporated laws are

categorically ineligible for TEFA; and

d. The Comptroller may investigate and exclude schools
based on alleged connections to designated entities without
need for individualized adjudication of wrongdoing.

43.    In a public press release accompanying Opinion KP-0509, Attorney General

Paxton declared:

> "Let me be crystal clear: Texans' tax dollars should never
> fund Islamic terrorists or America's enemies. The
> Comptroller's Office has always possessed exclusive
> authority under the TEFA framework to stop any school
> illegally tied to terrorists or foreign adversaries from
> accessing taxpayer dollars, and this opinion affirms that
> authority. There is no question that the Comptroller's
> Office is statutorily charged with ensuring that our school
> choice program is protected from abuse by terrorists or the
> Chinese Communist Party."

44.    Paxton further stated that his office "stands ready to vigorously defend

legal challenges to any lawful determination by the Comptroller's Office aimed at

preventing terrorists or our Nation's enemies from abusing the TEFA program."

45.    Governor Abbott's November 19, 2025, designation of CAIR as both a

foreign terrorist organization and a transnational criminal organization was made

without adjudication, without notice or hearing to CAIR, and without individualized

findings of unlawful conduct; CAIR has publicly denied the accusations and filed

suit challenging the designation.

46.    The designation and Opinion KP-0509 have been wielded by Defendants as

a pretext to exclude Islamic schools from TEFA based on broad, guilt-by-association

theories that treat hosting community events, facilitating civic education, or being

located at addresses where Islamic organizations have met as disqualifying "ties" to terrorism.

### D.   Statewide Exclusion of All Islamic Schools from TEFA

47.   Within ten days of the December 2025 launch of TEFA school applications, more than 600 private schools and 200 education service providers applied for participation.

48.   By late December 2025, the Comptroller's Office publicly announced that hundreds of private schools had been approved for TEFA participation.

49.   By January 2026, media reported that more than 200 Houston-area private schools, including numerous Christian schools and non-religious schools, had been approved to participate in TEFA.

50.   As of February 4, 2026—the date TEFA applications opened for families— not a single accredited Islamic private school in Texas had been approved to participate in TEFA.

51.   On February 10, 2026, CAIR-Texas issued a public action alert titled "Urge the Texas Comptroller's Office to End Exclusion of Muslim Families from TEFA," stating:

> "Muslim families in Texas are being shut out. TEFA applications opened Feb. 4, yet not a single accredited Islamic private school has been approved to participate in the program. This means Muslim parents are categorically barred from applying for TEFA funding to send their children to accredited Islamic schools, while thousands of non-Muslim families can access these funds."

52.    On February 19, 2026, the Texas Senate Democratic Caucus sent a letter to Comptroller Hancock stating:

> "We are deeply concerned by reports that your office is excluding Islamic schools from the Texas Education Freedom Accounts (TEFA) program based on religious identity.... Multiple Islamic schools have been denied or removed from eligibility despite having no affiliation with CAIR or any designated organization cited in generalized allegations.... Your actions appear to constitute viewpoint discrimination and denominational preference prohibited by the First Amendment."

53.    On information and belief, the Comptroller's Office has not approved any Islamic school's application for TEFA participation and has used the Governor's designation of CAIR and the Attorney General's opinion as a basis to delay, deny, or refuse to process applications from Islamic schools based on their religious identity and alleged "Islamic ties."

54.    The exclusion is not based on individualized findings of unlawful conduct by any specific school, but rather on categorical presumptions that Islamic schools are suspect and potentially linked to terrorism by virtue of their religious identity and community associations.

### E.    HQA Spring's Exclusion and Plaintiff's Injury

55.    Despite HQA Spring's Cognia accreditation and satisfaction of every neutral statutory criterion for TEFA participation, HQA Spring does not appear on the Comptroller's list of approved TEFA schools accessible through the TEFA portal at educationfreedom.texas.gov.

56.    When Plaintiff accesses the TEFA portal, the system confirms that his two children are individually eligible for TEFA funding based on their residence, grade level, and other neutral criteria.

57.    However, because HQA Spring is not listed as an approved participating school, Plaintiff cannot complete a TEFA application designating HQA Spring as his children's school and directing TEFA funds there.

58.    TEFA's design requires that parents select from the list of approved schools maintained by the Comptroller; there is no mechanism for parents to apply for funding at schools not on the approved list.

59.    Plaintiff currently pays approximately $17,910 per year in tuition for his two children to attend HQA Spring.

60.    If HQA Spring were approved for TEFA participation, Plaintiff's children would be eligible for approximately $10,474 each, totaling approximately $20,948 per year in TEFA funding—entirely covering his children's tuition costs.

61.    Because Defendants have excluded HQA Spring from TEFA, Plaintiff must pay the full $17,910 tuition out of pocket, while similarly situated non-Muslim families whose children attend approved private schools receive over $20,000 per year in state-funded educational benefits.

62.    The TEFA application period for the 2026–27 school year opened on February 4, 2026, and closes on March 17, 2026—less than three weeks from the filing of this Complaint. Unless HQA Spring is approved and added to the list of participating schools before March 17, 2026, Plaintiff will be unable to receive

TEFA funding for his children for the entire 2026–27 school year, resulting in the loss of over $20,000 in benefits and ongoing constitutional violations throughout the school year.

63.    Defendants' exclusion of HQA Spring and all Islamic schools from TEFA burdens Plaintiff's free exercise of religion by penalizing his religiously motivated decision to provide his children with an Islamic education and forcing him to choose between his faith and equal access to a public benefit available to other families.

64.    Defendants' actions also stigmatize and demean Plaintiff, his children, and the Muslim community by officially declaring that Islamic schools are presumptively linked to terrorism and are unworthy of the same public support extended to non-Islamic schools.

65.    The exclusion inflicts concrete financial harm (loss of over $20,000 per year), dignitary harm (official stigmatization of Plaintiff's religion), and spiritual harm (burden on Plaintiff's religious exercise and ability to raise his children in accordance with his faith).

### F.    Immediate and Irreparable Harm Requiring Emergency Relief

66.    Plaintiff faces immediate and irreparable injury that cannot be remedied by money damages and requires emergency equitable relief in the form of a temporary restraining order and preliminary injunction. "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Book People, Inc. v. Wong*, 91 F.4th 318, 340–41 (5th Cir. 2024).

67.     **Time-sensitive deadline**: The TEFA application deadline of March 17, 2026, is an imminent, non-extendable cutoff. If HQA Spring is not restored to the approved school list before that date, Plaintiff will lose his ability to apply for the 2026–27 school year entirely.

68.     **Loss of constitutional rights constitutes irreparable harm per se**: Plaintiff's ongoing deprivation of his First and Fourteenth Amendment rights— including free exercise of religion, freedom from religious discrimination, and equal protection—constitutes irreparable injury that cannot be compensated with money damages.

69.     **Economic harm cannot be fully remedied**: The loss of over $20,000 in TEFA funding for the 2026–27 school year imposes immediate financial hardship on Plaintiff's family. Even if Plaintiff ultimately prevails on the merits, retrospective monetary relief cannot restore his children's ability to attend HQA Spring with TEFA support during the 2026–27 school year or remedy the year-long deprivation of equal educational benefits.

70.     **Dignitary and spiritual harm**: The ongoing official stigmatization of Plaintiff's religion and the burden on his religious exercise inflict continuing non-economic injuries that are inherently irreparable.

71. **Defendants' conduct is likely unconstitutional**: Plaintiff has demonstrated a substantial likelihood of success on the merits of his constitutional claims, as Defendants' categorical exclusion of all Islamic schools while approving hundreds of non-Islamic schools constitutes facial religious discrimination subject to strict scrutiny, which Defendants cannot satisfy.

72. **Balance of equities and public interest favor relief**: Plaintiff and other Muslim families face severe, irreversible harm absent emergency relief, while Defendants will suffer no cognizable harm from temporarily processing HQA Spring's application under neutral criteria and adding it to the approved school list if it meets statutory requirements. The public interest is always served by preventing ongoing constitutional violations and ensuring equal treatment of all religious denominations in public benefit programs.

## V. CAUSES OF ACTION

### COUNT I
### Free Exercise Clause – First Amendment (42 U.S.C. § 1983)
### (Facial and As-Applied Challenge)

73. Plaintiff incorporates paragraphs 1–72.

74. The Free Exercise Clause of the First Amendment, incorporated against the States through the Fourteenth Amendment, protects the right of individuals to practice their religion without governmental penalty or coercion and forbids laws and policies that target religious conduct for discriminatory treatment.

75.     Government violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits, imposes disabilities on the basis of religious status, or gerrymanders eligibility criteria to exclude a particular religious denomination.

76.     Government violates the Free Exercise Clause when it conditions receipt of a public benefit on the surrender of a constitutional right, including the right to select religious education for one's children.

77.     Where a law or policy is not neutral or not generally applicable—that is, where it targets religious exercise for differential treatment or contains mechanisms of individualized exemption—strict scrutiny applies, and the government must demonstrate that its policy is narrowly tailored to serve a compelling governmental interest.

78.     TEFA is a generally available public benefit program designed to provide educational funding to all eligible Texas families on a religiously neutral basis. The program's express purpose is to expand educational choice and support families' decisions to select private schools, including religious schools, that align with their values and educational goals.

79.     The TEFA program, as designed and implemented by Defendants, provides a generally available public benefit in the form of tuition assistance for private education. By interpreting and applying the "other relevant law" provision of the Texas Education Code to disqualify otherwise eligible schools because of their religious character and mission, Defendants have unconstitutionally penalized

Plaintiff's free exercise of religion. The U.S. Supreme Court has repeatedly held that a state "cannot disqualify some private schools solely because they are religious" from a program of public benefits. *Espinoza v. Montana Dept. of Revenue*, 140 S. Ct. 2246, 2261 (2020).

80.    Defendants' policy of subjecting Islamic schools to heightened, discriminatory scrutiny and excluding them from the TEFA program constitutes impermissible discrimination on the basis of religion. This exclusion is based both on the schools' religious "status" as Islamic institutions and their religious "use" of funds to "inculcat[e]… teachings" and "train[ ] [students] to live their faith," which is the "very core of the mission of a private religious school." *Carson v. Makin*, 142 S. Ct. 1987, 2001 (2022). Such a distinction between status and use is constitutionally immaterial for purposes of the Free Exercise Clause. *Id.*.

81.    As such, the TEFA program, as applied by Defendants to Plaintiff and his children's school, violates the Free Exercise Clause. Facially, the "other relevant law" provision of Texas Education Code § 29.358(h)(2) is unconstitutional because it provides no standards for its application, vesting Defendants with unfettered discretion to discriminate against religious institutions based on the content of their beliefs, in violation of the First and Fourteenth Amendments.

82.    Because Defendants' policy is neither neutral nor generally applicable, but instead "imposes special disabilities on the basis of religious status," it is subject to the strictest scrutiny. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.

Ct. 2012, 2021 (2017). Defendants must demonstrate that their policy is narrowly tailored to advance a compelling governmental interest. *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993).

83.    Defendants cannot satisfy this demanding standard. While the State has a compelling interest in national security, a policy that broadly targets and excludes schools based on their religious identity, without any individualized showing of wrongdoing, is not a legitimate exercise of that interest. Furthermore, an "interest in separating church and state more fiercely than the Federal Constitution… cannot qualify as compelling in the face of the infringement of free exercise." *Espinoza*, 140 S. Ct. at 2260.

84.    Defendants have imposed a religious gerrymander on TEFA by systematically excluding all Islamic schools while approving hundreds of Christian, Jewish, and secular private schools, thereby denying Muslim families access to benefits available to similarly situated non-Muslim families.

85.    Defendants' exclusion of Islamic schools is not neutral or generally applicable. It is explicitly based on religious identity (schools are targeted because they are Islamic), perceived religious association (hosting community events with Islamic civil-rights organizations), and religious animus (official statements equating Islamic identity with terrorism).

86.    Defendants' interpretation of the "other relevant law" provision in TEFA, as articulated in Opinion KP-0509 and applied by the Comptroller, operates as a denominational disqualification that targets Islamic schools for exclusion based on:

a. Their religious identity as Islamic institutions;

b. Alleged associations with Islamic civil-rights organizations such as CAIR;

c. Presumptions that Islamic identity and community ties constitute "ties to terrorism" or "foreign adversaries"; and

d. Guilt-by-association theories that would never be applied to Christian, Jewish, or secular schools hosting events with advocacy organizations or civil-rights groups.

82.    No Islamic school has been adjudicated to have violated any law prohibiting material support to terrorism or restricting foreign adversary control. Defendants' exclusions are based on speculative, categorical presumptions of guilt tied solely to religious identity.

83.    Defendants' policies impose a substantial burden on Plaintiff's religious exercise by:

a. Denying him and his children the opportunity to access over $20,000 per year in public educational benefits solely because they practice Islam and choose Islamic education;

b. Imposing a significant financial penalty (loss of TEFA funding) on his decision to send his children to an Islamic school;

c. Coercing Plaintiff to abandon Islamic education and select a non-Islamic school in order to access TEFA benefits; and

d. Conveying an official message that Islamic religious practice and
education are suspect, dangerous, and unworthy of equal treatment.

84.    Defendants' policies fail strict scrutiny. Even assuming a compelling
interest in preventing material support to terrorism or foreign adversary
infiltration of schools, Defendants' categorical exclusion of all Islamic schools based
on religious identity, without individualized findings of wrongdoing, is not narrowly
tailored and is vastly overinclusive.

85.    Less restrictive alternatives exist, including individualized investigation
of specific schools only when credible evidence of unlawful conduct exists,
application of neutral accreditation and compliance standards, and enforcement of
existing criminal laws against actual material support to terrorism.

86.    Defendants' facial policy and its application to Plaintiff violate the Free
Exercise Clause and are actionable under 42 U.S.C. § 1983.

## COUNT II

### Establishment Clause – First Amendment (42 U.S.C. § 1983)
### (Facial and As-Applied Challenge)

87.    Plaintiff incorporates paragraphs 1–86.

88.    The Establishment Clause prohibits the government from preferring one
religion over another, from expressing official hostility toward a particular faith,
and from using religious classifications to allocate public benefits.

89.     By systematically excluding Islamic schools while approving hundreds of
Christian, Jewish, and other non-Islamic religious schools for TEFA participation,

Defendants have engaged in denominational discrimination that favors non-Islamic religions over Islam in the distribution of a public benefit.

90.    Defendants' policies and public statements evince a purpose and effect of disfavoring Islam and conveying governmental disapproval of the Muslim faith.

91.    Attorney General Paxton's declaration that "Texans' tax dollars should never fund Islamic terrorists or America's enemies," issued in connection with guidance authorizing exclusion of Islamic schools, constitutes an official expression of hostility toward Islam and conveys the message that Islamic religious institutions are inherently suspect and unworthy of public support.

92.    Defendants' selective application of heightened scrutiny to Islamic schools—examining whether they have "hosted events" with Islamic organizations or have "Islamic ties"—while not subjecting Christian or Jewish schools to comparable scrutiny for associations with Christian or Jewish advocacy groups, constitutes impermissible denominational discrimination.

93.    Defendants' conduct violates the Establishment Clause and is actionable under 42 U.S.C. § 1983.


## COUNT III

**Equal Protection Clause – Fourteenth Amendment (42 U.S.C. § 1983)
(Facial and As-Applied Challenge)**

94.    Plaintiff incorporates paragraphs 1–93.

95.    The Equal Protection Clause prohibits states from denying any person the equal protection of the laws and forbids intentional discrimination on the basis of religion.

96.    Defendants, acting under color of state law, have intentionally discriminated against Plaintiff and similarly situated Muslim families on the basis of religion by excluding Islamic schools from TEFA eligibility while approving comparable non-Islamic schools.

97.    Classifications based on religion are subject to strict scrutiny and must be narrowly tailored to serve a compelling governmental interest.

98.    Defendants cannot demonstrate a compelling interest in categorically excluding all Islamic schools from a generally available educational benefit program, and their blanket exclusion based on religious identity is not narrowly tailored to any legitimate interest.

99.    Even under rational basis review, Defendants' exclusionary policies are irrational and arbitrary, grounded in stereotypes, animus, and speculative fears rather than neutral criteria or individualized evidence of wrongdoing.

100.    Defendants' conduct violates the Equal Protection Clause and is actionable under 42 U.S.C. § 1983.

## COUNT IV

### Due Process – Fourteenth Amendment (42 U.S.C. § 1983)
### (Vagueness Challenge)

101.    Plaintiff incorporates paragraphs 1–100.

102.    The Due Process Clause requires that laws and regulations provide fair notice of prohibited conduct and impose sufficiently definite standards to prevent arbitrary and discriminatory enforcement.

103.     Defendants have invoked the phrase "other relevant law" in Senate Bill 2 as authority to exclude schools based on vague, undefined concepts such as "Islamic ties," "connections" to organizations hosting events at school facilities, and speculative "associations" with entities designated by the Governor without adjudication.

104.     Neither the TEFA statute nor any implementing rule defines what constitutes disqualifying "ties" to a designated organization, what level of association or connection triggers exclusion, or what process schools or parents may use to challenge exclusion.

105.     Defendants' application of these vague criteria has resulted in arbitrary, discriminatory enforcement that categorically targets Islamic schools while exempting similarly situated non-Islamic schools.

106.     The lack of clear standards and the absence of meaningful procedural safeguards violate due process and are actionable under 42 U.S.C. § 1983.

## COUNT V

### Unconstitutional Conditions Doctrine
### (First and Fourteenth Amendments; 42 U.S.C. § 1983)

107.     Plaintiff incorporates paragraphs 1–106.

108.     The unconstitutional conditions doctrine prohibits the government from conditioning the receipt of a public benefit on the relinquishment of a constitutional right.

109.    By conditioning access to TEFA funds on the selection of a non-Islamic school, Defendants coerce Plaintiff to surrender his Free Exercise right to provide his children with an Islamic education.

110.    TEFA is not a narrow, targeted program with an inherent governmental message; it is a broad, generally available educational benefit designed to facilitate private choice among diverse educational options, including religious schools of all denominations.

111.    Defendants' exclusion of Islamic schools imposes an unconstitutional condition on Plaintiff's receipt of TEFA benefits and violates the First and Fourteenth Amendments, actionable under 42 U.S.C. § 1983.

## COUNT VI

### 42 U.S.C. § 1983 – Deprivation of Constitutional Rights

112.    Plaintiff incorporates paragraphs 1–111.

113.    Defendants, acting under color of state law and pursuant to official policy and practice, have deprived Plaintiff of rights secured by the First and Fourteenth Amendments to the United States Constitution.

114.    Plaintiff is entitled to declaratory and injunctive relief, nominal damages, and attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. **Issue a Temporary Restraining Order**, on an emergency ex parte or expedited basis pursuant to Fed. R. Civ. P. 65(b), immediately upon the filing of this Complaint and before the March 17, 2026, TEFA application deadline, ordering Defendants and their officers, agents, employees, and all persons acting in concert with them to:

1. Immediately restore Houston Qur'an Academy Spring and all other Cognia-accredited Islamic private schools that satisfy the neutral statutory criteria in Texas Education Code § 29.358(b) to the list of approved TEFA participating schools accessible through the TEFA portal at educationfreedom.texas.gov;

2. Cease excluding, delaying, or denying approval of HQA Spring and other Islamic schools from TEFA participation based on their Islamic religious identity, alleged "Islamic ties," or generalized associations with Islamic civil-rights or community organizations absent individualized, adjudicated findings of unlawful conduct;

3. Process HQA Spring's TEFA participation application (or deemed application based on Cognia accreditation) immediately and approve HQA Spring for participation if it satisfies the neutral statutory criteria, and add it to the approved school list before March 17, 2026; and

4. Enable Plaintiff to complete and submit a TEFA application directing funds to HQA Spring for his children's education for the 2026–27 school year before the March 17, 2026, application deadline.

27

B. **Declare** that:

1.     Defendants' policies, practices, and interpretations that exclude or effectively bar accredited Islamic private schools—including Houston Qur'an Academy Spring—from participation in the Texas Education Freedom Accounts program violate the Free Exercise Clause, Establishment Clause, Equal Protection Clause, and Due Process Clause of the First and Fourteenth Amendments to the United States Constitution and are actionable under 42 U.S.C. § 1983.

2.     The provision in Texas Education Code § 29.358(h)(2) allowing for disqualification based on "other relevant law" is unconstitutional on its face and as applied by Defendants, as it vests unbridled discretion to discriminate against religious institutions in violation of the First and Fourteenth Amendments.

C. **Issue a preliminary injunction**, after notice and hearing pursuant to Fed. R. Civ. P. 65(a) and before the March 17, 2026, TEFA application deadline, prohibiting Defendants and their officers, agents, employees, and all persons acting in concert with them from:

1. Excluding Houston Qur'an Academy Spring and other Cognia-accredited Islamic private schools from TEFA participation based on their Islamic religious identity, alleged "Islamic ties," or generalized associations with Islamic civil-rights or community organizations absent individualized, adjudicated findings of unlawful conduct;

2. Denying or delaying approval of HQA Spring's TEFA participation application based on religious discrimination or application of unconstitutional criteria;

3. Removing HQA Spring from the list of approved TEFA schools based on religious discrimination; and

4. Preventing Plaintiff from completing and submitting a TEFA application directing funds to HQA Spring for his children's education for the 2026–27 school year.

D. **Issue a permanent injunction** prohibiting Defendants from:

1. Administering TEFA in a manner that discriminates against Plaintiff, his children, and other Muslim families on the basis of religion;

2. Applying heightened scrutiny, vague "ties to terrorism" standards, or guilt-by-association theories to exclude Islamic schools from TEFA while not applying comparable scrutiny to non-Islamic religious schools;

3. Conditioning TEFA participation on the absence of Islamic religious identity or association with Islamic community, civil-rights, or advocacy organizations; and

4. Implementing or enforcing Opinion No. KP-0509 or any similar policy that authorizes categorical exclusion of Islamic schools from TEFA based on religious identity rather than individualized, neutral findings of statutory ineligibility.

E. **Order** Defendants, within a timeframe specified by the Court and before the March 17, 2026, TEFA application deadline, to:

1. Promptly process HQA Spring's TEFA participation application under the same neutral, non-discriminatory standards applied to non-Islamic private schools;

2. Approve HQA Spring for TEFA participation if it satisfies the neutral statutory criteria in Texas Education Code § 29.358(b); and

3. Add HQA Spring to the Comptroller's list of approved TEFA schools, enabling Plaintiff to complete his TEFA application for the 2026–27 school year.

F. **Award nominal damages** to Plaintiff for the violation of his constitutional rights.

G. **Award reasonable attorneys' fees** pursuant to 42 U.S.C. § 1988.

H. **Grant such other and further relief** as the Court deems just, proper, and equitable.

Respectfully submitted on Friday February 27, 2026.

Cherkaoui & Associates P.L.L.C.

/s/ *Mehdi Cherkaoui*
Mehdi Cherkaoui
Southern District of Texas ID No. 2101221
Texas Bar No. 24086077
Cherkaoui & Associates P.L.L.C.
700 Louisiana Street Suite 3950
Houston, TX 77002
Phone: 281-946-9466
Fax: 877-282-7874
Mehdi@cherkaouilawfirm.com
**ATTRONEYS FOR THE PLAINTIFF**