**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**(Houston Division)**

| | |
|---|---|
| **MEHDI CHERKAOUI** ) | |
| **Individually and on behalf of his two minor** ) | |
| **children** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Civil Action No. 4:26-cv-1675** |
| ) | |
| **KEN PAXTON, in his official capacity as** ) | |
| **Attorney General of Texas;** ) | |
| **KELLY HANCOCK, in his official capacity as** ) | |
| **Acting Comptroller of Public Accounts of the State** ) | |
| **of Texas; and** ) | |
| **MIKE MORATH, in his official capacity as** ) | |
| **Commissioner of Education of the State of Texas** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER PURSUANT TO FED. R. CIV. P. 65(b)

Plaintiff Mehdi Cherkaoui, individually and on behalf of his two minor children, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 65(b) for entry of a temporary restraining order to prevent irreparable constitutional injury before the imminent March 17, 2026 deadline for Texas Education Freedom Accounts (TEFA) applications.

## I. INTRODUCTION

Plaintiff's children attend Houston Qur'an Academy Spring ("HQA Spring"), a fully accredited Islamic K-12 school that satisfies every neutral statutory criterion for TEFA participation. Yet Defendants have systematically excluded all Islamic schools from TEFA while approving hundreds of Christian, Jewish, and secular private schools—a categorical religious

gerrymander that violates the Free Exercise Clause, Establishment Clause, Equal Protection Clause, and Due Process Clause of the First and Fourteenth Amendments.

Unless this Court grants emergency relief before March 17, 2026, Plaintiff will permanently lose access to over $20,000 in TEFA funding for the 2026-27 school year and suffer ongoing deprivation of his constitutional rights. The loss of First Amendment freedoms, even for minimal periods, constitutes irreparable injury per se.[1] Time is of the essence.

This motion is supported by the Complaint, Declaration of Mehdi Cherkaoui, and accompanying memorandum of law filed contemporaneously herewith.

## II. STATEMENT OF FACTS

### A. The TEFA Program Framework

In 2025, the Texas Legislature enacted Senate Bill 2, establishing the Texas Education Freedom Accounts program.[2] TEFA provides Education Savings Accounts funded by state tax revenues, offering approximately $10,474 per eligible student for the 2026-27 school year to pay for private school tuition, fees, and educational expenses.[3]

TEFA is structured as a generally available, religiously neutral public benefit program explicitly open to religious schools of all denominations.[4] The statute emphasizes "strong religious liberty and private school autonomy" protections and operates as a true private-choice mechanism where parents—not the state—select schools and direct funds.[5]

---

[1] *Elrod v. Burns*, 427 U.S. 347, 373 (1976).
[2] Texas Education Code Chapter 29, Subchapter H (2025); Complaint ¶ 24.
[3] Complaint ¶ 25.
[4] Complaint ¶¶ 26-28.
[5] Complaint ¶¶ 29-30.

Private schools become eligible for TEFA participation by satisfying neutral criteria including: (a) location in Texas; (b) accreditation by a Texas Private School Accreditation Commission-recognized agency such as Cognia; (c) continuous operation for at least two school years; (d) administration of standardized assessments; and (e) compliance with applicable laws.[6]

## B. HQA Spring's Full Compliance with Statutory Requirements

Houston Qur'an Academy Spring is a full-time Islamic K-12 school in Harris County, Texas, serving Plaintiff's two minor children.[7] HQA Spring is accredited by Cognia, a nationally recognized accrediting body approved by TEPSAC for TEFA purposes.[8] HQA Spring has operated continuously for more than two years, offers a comprehensive academic curriculum, and administers standardized assessments.[9]

HQA Spring satisfies each neutral statutory criterion in Texas Education Code § 29.358(b) for TEFA participation.[10] HQA Spring has no connection to terrorism, provides no material support to any foreign terrorist organization, is not owned or controlled by any foreign adversary, and violates no federal or Texas law.[11]

## C. Defendants' Coordinated Exclusion of All Islamic Schools

Beginning in December 2025, Acting Comptroller Hancock publicly announced concerns about "Islamic and Chinese ties" among TEFA applicants and requested an opinion from Attorney General Paxton.[12] Hancock's request specifically referenced Cognia-accredited schools

---

[6] Texas Education Code § 29.358(b); Complaint ¶ 27.
[7] Complaint ¶ 32; Declaration of Mehdi Cherkaoui ¶¶ 4-5.
[8] Complaint ¶ 33; Declaration ¶ 6.

[9] Complaint ¶ 34.
[10] Complaint ¶ 35.
[11] Complaint ¶ 36.
[12] Complaint ¶¶ 38-41.

that "hosted publicly advertised events organized" by the Council on American-Islamic Relations (CAIR), which Governor Abbott had designated as a foreign terrorist organization.[13]

On January 23, 2026, Attorney General Paxton issued Opinion No. KP-0509, affirming the Comptroller's authority to exclude schools based on alleged "ties" to designated entities under the statute's "other relevant law" provision.[14] Paxton's accompanying public statement declared: "Let me be crystal clear: Texans' tax dollars should never fund Islamic terrorists or America's enemies."[15]

As a direct result of this coordinated policy, not a single accredited Islamic private school has been approved for TEFA participation—despite approval of hundreds of other private schools statewide, including numerous Christian schools.[16]

## D. Plaintiff's Immediate Injury and Time-Sensitive Harm

Plaintiff pays approximately $17,910 per year in tuition for his two children to attend HQA Spring.[17] His children are individually eligible for TEFA funding totaling approximately $20,948 annually.[18] However, because HQA Spring does not appear on the Comptroller's list of approved schools, Plaintiff cannot complete a TEFA application designating HQA Spring.[19]

The TEFA application period for 2026-27 opened February 4, 2026 and closes March 17, 2026—less than three weeks from the filing of this motion.[20] Unless HQA Spring is approved

---

[13] Complaint ¶ 40.
[14] Complaint ¶ 42; Attorney General Opinion No. KP-0509 (Jan. 23, 2026).
[15] Complaint ¶ 43; AG Opinion KP-0509, Public Statement.
[16] Complaint ¶¶ 47-53.
[17] Complaint ¶ 59; Declaration ¶ 9.
[18] Complaint ¶ 60; Declaration ¶ 14.
[19] Complaint ¶¶ 55-58; Declaration ¶¶ 20-24.
[20] Complaint ¶ 62; Declaration ¶¶ 32-33.

and added to the participating school list before March 17, 2026, Plaintiff will be unable to receive TEFA funding for his children for the entire 2026-27 school year, resulting in loss of over $20,000 in benefits and ongoing constitutional violations.[21]

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 65(b), a court may issue a temporary restraining order without notice to the adverse party only if:

(a) Specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(b) The movant's attorney certifies in writing any efforts made to give notice and the reasons supporting the claim that notice should not be required.[22]

The standards for granting a TRO mirror those for preliminary injunctions. The movant must establish:

(1) A substantial likelihood of success on the merits;

(2) A substantial threat of irreparable injury if the injunction is not granted;

(3) That the threatened injury outweighs any damage the injunction might cause the defendant; and

(4) That the injunction will not disserve the public interest.[23]

---

[21] Complaint ¶ 62; Declaration ¶ 34.
[22] Fed. R. Civ. P. 65(b)(1)(A)-(B).
[23] *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).

Where, as here, the government is the party opposing the injunction, the last two factors merge.[24] Moreover, when an alleged deprivation of a constitutional right is involved, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," and "no further showing of irreparable injury is necessary."[25]

## IV. ARGUMENT

### A. <u>Plaintiff Demonstrates a Substantial Likelihood of Success on the Merits</u>

Plaintiff has established a substantial likelihood of success on his constitutional claims under the Free Exercise Clause, Establishment Clause, Equal Protection Clause, and Due Process Clause.

#### 1. Free Exercise Clause Violation

The Free Exercise Clause prohibits government from excluding religious observers from otherwise available public benefits, imposing disabilities on the basis of religious status, or gerrymandering eligibility criteria to exclude particular religious denominations.[26]

The Supreme Court has repeatedly held that a state "cannot disqualify some private schools solely because they are religious" from programs of public benefits.[27] In *Espinoza v. Montana Department of Revenue*, the Court struck down Montana's exclusion of religious schools from a scholarship program as unconstitutional religious discrimination.[28]

---

[24] *Nken v. Holder*, 556 U.S. 418, 435 (2009).
[25] *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Book People, Inc. v. Wong*, 91 F.4th 318, 340-41 (5th Cir. 2024).
[26] *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021 (2017).
[27] *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2261 (2020).

[28] *Id.* at 2263.

In *Carson v. Makin*, the Court held that Maine could not exclude sectarian schools from a tuition assistance program based on their religious "use" of funds to inculcate faith.[29] Here, Defendants have systematically excluded all Islamic schools from TEFA while approving hundreds of non-Islamic religious and secular schools. This exclusion is based explicitly on:

- Religious identity as Islamic institutions;

- Alleged associations with Islamic civil rights organizations;

- Presumptions that Islamic identity constitutes "ties to terrorism"; and

- Guilt-by-association theories never applied to Christian, Jewish, or secular schools.[30]

Defendants' policy is neither neutral nor generally applicable—it targets Islamic schools for discriminatory treatment based solely on religious identity without individualized findings of wrongdoing.[31] Such policies trigger strict scrutiny, requiring narrow tailoring to serve a compelling governmental interest.[32]

Defendants cannot satisfy this standard. While national security is compelling, a blanket exclusion of all Islamic schools based on religious identity—without individualized evidence of unlawful conduct—is vastly overinclusive and not narrowly tailored.[33] Less restrictive alternatives exist, including individualized investigation only when credible evidence exists, application of neutral accreditation standards, and enforcement of existing criminal laws.[34]

---

[29] *Carson v. Makin*, 142 S. Ct. 1987, 2001 (2022).
[30] Complaint ¶¶ 86-87.
[31] Complaint ¶ 85.
[32] *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993).
[33] Complaint ¶¶ 83-84.
[34] Complaint ¶ 85.

## 2. Establishment Clause Violation

The Establishment Clause prohibits government from preferring one religion over another, expressing official hostility toward a particular faith, or using religious classifications to allocate public benefits.[35]

Defendants' systematic exclusion of Islamic schools while approving hundreds of Christian, Jewish, and other non-Islamic schools constitutes impermissible denominational discrimination.[36] Attorney General Paxton's declaration that "Texans' tax dollars should never fund Islamic terrorists or America's enemies" constitutes an official expression of hostility toward Islam.[37]

Defendants' selective scrutiny of Islamic schools for "Islamic ties" while exempting Christian and Jewish schools from comparable examination of associations with Christian or Jewish advocacy groups violates the Establishment Clause's prohibition on denominational preference.[38]

## 3. Equal Protection Violation

The Equal Protection Clause forbids intentional discrimination on the basis of religion.[39] Classifications based on religion are subject to strict scrutiny and must be narrowly tailored to serve a compelling governmental interest.[40]

---

[35] Complaint ¶ 88.
[36] Complaint ¶ 89.
[37] Complaint ¶ 91.
[38] Complaint ¶ 92.
[39] Complaint ¶ 95.
[40] Complaint ¶ 97.

Defendants have intentionally discriminated against Plaintiff and Muslim families by excluding Islamic schools from TEFA eligibility while approving comparable non-Islamic schools.[41] This categorical exclusion based on religious identity cannot survive strict scrutiny and is irrational even under rational basis review, grounded in stereotypes and animus rather than neutral criteria or individualized evidence.[42]

### 4. Due Process Vagueness Violation

The Due Process Clause requires that laws provide fair notice and impose sufficiently definite standards to prevent arbitrary and discriminatory enforcement.[43]

Defendants invoke undefined concepts of "Islamic ties," "connections" to organizations hosting events at facilities, and speculative "associations" to exclude schools.[44] Neither the statute nor implementing rules define what constitutes disqualifying "ties," what level of association triggers exclusion, or what process exists to challenge exclusions.[45] This vagueness has resulted in arbitrary, discriminatory enforcement targeting Islamic schools while exempting similarly situated non-Islamic schools.[46]

Plaintiff has demonstrated a substantial likelihood of success on multiple independent constitutional grounds.

### B. <u>Plaintiff Faces Immediate and Irreparable Harm Absent Emergency Relief</u>

Plaintiff satisfies the irreparable harm requirement through four independent showings, each sufficient standing alone.

---

[41] Complaint ¶ 96.
[42] Complaint ¶¶ 98-99.
[43] Complaint ¶ 102.
[44] Complaint ¶ 103.
[45] Complaint ¶ 104.
[46] Complaint ¶ 105.

### 1. Constitutional Violations Constitute Irreparable Harm Per Se

"[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[47] "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."[48] Plaintiff's ongoing deprivation of Free Exercise rights, freedom from religious discrimination, and Equal Protection guarantees constitutes irreparable injury that cannot be compensated with money damages.[49] This per se rule applies with particular force where, as here, the constitutional violation involves official government stigmatization of a religious minority.[50]

### 2. Imminent, Non-Extendable Deadline Creates Time-Sensitive Emergency

The March 17, 2026 TEFA application deadline is an imminent, non-extendable cutoff less than three weeks away.[51] If HQA Spring is not restored to the approved school list before that date, Plaintiff will lose his ability to apply for the 2026-27 school year entirely.[52]

This time-sensitive harm cannot be remedied through retrospective relief. Unlike monetary damages that can be paid retroactively, the March 17 deadline operates as an absolute bar to participation for the entire academic year.[53] The Court's intervention must occur before the deadline or the injury becomes permanent and irremediable.

---

[47] *Elrod v. Burns*, 427 U.S. 347, 373 (1976).
[48] *Book People, Inc. v. Wong*, 91 F.4th 318, 340-41 (5th Cir. 2024).
[49] Complaint ¶ 68; Declaration ¶¶ 35-38.
[50] *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1729 (2018) (official government hostility toward religion violates Free Exercise Clause).
[51] Complaint ¶ 67; Declaration ¶ 32.
[52] Complaint ¶ 67; Declaration ¶ 34.
[53] Declaration ¶ 39.

### 3. Economic Harm Cannot Be Fully Remedied by Money Damages

Loss of over $20,000 in TEFA funding for 2026-27 imposes immediate financial hardship on Plaintiff's family.[54] Even if Plaintiff ultimately prevails on the merits, retrospective monetary relief cannot restore his children's ability to attend HQA Spring with TEFA support during the 2026-27 school year or remedy the year-long deprivation of equal educational benefits available to non-Muslim families.[55]

Moreover, as state officials acting in their official capacities, Defendants may assert sovereign immunity defenses to monetary damages, rendering legal remedies inadequate and further demonstrating irreparable harm.[56]

### 4. Dignitary and Spiritual Harm

The ongoing official stigmatization of Plaintiff's religion—through categorical exclusion of Islamic schools coupled with public statements equating Islamic education with terrorism—inflicts continuing dignitary and spiritual injuries that are inherently non-compensable.[57]

Attorney General Paxton's declaration that Texas will not fund "Islamic terrorists" while simultaneously approving Christian schools conveys an official message that Muslim families like Plaintiff's are presumptively dangerous and unworthy of equal treatment.[58] This dignitary harm cannot be remedied through monetary compensation and constitutes irreparable injury requiring equitable relief.[59]

---

[54] Complaint ¶ 69; Declaration ¶ 36.
[55] Complaint ¶ 69.
[56] *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).
[57] Complaint ¶ 70; Declaration ¶ 38.
[58] Complaint ¶¶ 7, 43; Declaration ¶¶ 28-30.
[59] *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (dignitary harms warrant nominal damages at minimum, indicating non-compensability through legal remedies alone).

### C. The Balance of Equities and Public Interest Strongly Favor Injunctive Relief

Where the government is a party, the balance of harms and public interest factors merge.[60] Both weigh heavily in Plaintiff's favor.

#### 1. Plaintiff Faces Severe, Irreversible Harm

Absent emergency relief, Plaintiff will suffer: (a) permanent loss of over $20,000 in educational benefits for 2026-27; (b) year-long deprivation of constitutional rights; (c) coerced choice between religious exercise and public benefits; and (d) ongoing official stigmatization of his faith.[61] These harms are severe and irreversible.

#### 2. Defendants Suffer No Cognizable Harm from Temporary Relief

Defendants will suffer no harm from temporarily processing HQA Spring's TEFA application under the same neutral statutory criteria applied to hundreds of other private schools.[62] The requested relief does not require Defendants to abandon legitimate oversight—it requires only that they apply neutral, non-discriminatory standards and cease categorical exclusion based on religious identity.[63]

If HQA Spring satisfies the neutral statutory requirements in Texas Education Code § 29.358(b)—which Plaintiff's evidence establishes it does—adding it to the approved school list imposes no burden on Defendants and affects no legitimate state interest.[64]

---

[60] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[61] Complaint ¶¶ 63-65; Declaration ¶¶ 35-39.
[62] Complaint ¶ 72.
[63] Complaint ¶ 72.
[64] Complaint ¶¶ 32-36.

### 3. Public Interest Favors Preventing Ongoing Constitutional Violations

"It is always in the public interest to prevent the violation of a party's constitutional rights."[65] The public has a paramount interest in ensuring that government benefits programs are administered without religious discrimination and that all religious denominations receive equal treatment under law.[66]

Far from harming public interests, the requested relief vindicates fundamental constitutional principles and ensures Texas complies with Supreme Court precedent prohibiting religious exclusions from generally available benefit programs.[67] Permitting systematic discrimination against Muslim families while the litigation proceeds would inflict ongoing constitutional harm and undermine public confidence in equal justice.

The balance of equities and public interest overwhelmingly favor granting emergency relief.

## V. CONCLUSION

Plaintiff has satisfied all requirements for issuance of a temporary restraining order. He demonstrates: (1) substantial likelihood of success on multiple constitutional claims; (2) immediate and irreparable harm through four independent showings; (3) that the balance of equities favors relief; and (4) that the public interest is served by preventing ongoing constitutional violations.

---

[65] *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002); *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013).

[66] *Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.").

[67] *Espinoza*, 140 S. Ct. at 2263; *Carson*, 142 S. Ct. at 2002.

The March 17, 2026, deadline creates an emergency requiring immediate judicial intervention. Without a temporary restraining order issued before that date, Plaintiff will suffer permanent, irremediable injury.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Grant this Emergency Motion for Temporary Restraining Order;

2. Enter the proposed Temporary Restraining Order attached as Exhibit A, ordering Defendants and their officers, agents, employees, and all persons acting in concert with them to immediately:

    (a) Restore Houston Qur'an Academy Spring other Islamic private schools to the list of approved TEFA participating schools accessible through educationfreedom.texas.gov;

    (b) Cease excluding, delaying, or denying approval of HQA Spring and other Islamic private schools from TEFA participation based on Islamic religious identity, alleged "Islamic ties," or associations with Islamic organizations absent individualized, adjudicated findings of unlawful conduct;

    (c) Process HQA Spring's TEFA participation application immediately under neutral statutory criteria and approve HQA Spring if it satisfies Texas Education Code § 29.358(b); and

    (d) Enable Plaintiff to complete and submit a TEFA application directing funds to HQA Spring before the March 17, 2026 deadline;

3. Schedule an expedited hearing on Plaintiff's Motion for Preliminary Injunction within 14 days pursuant to Fed. R. Civ. P. 65(b)(2); and

4. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 4th day of March, 2026.

Cherkaoui & Associates P.L.L.C.

/s/ *Mehdi Cherkaoui*
Mehdi Cherkaoui
Southern District of Texas ID No. 2101221
Texas Bar No. 24086077
Cherkaoui & Associates P.L.L.C.
700 Louisiana Street Suite 3950
Houston, TX 77002
Phone: 281-946-9466
Fax: 877-282-7874
Mehdi@cherkaouilawfirm.com
**ATTRONEYS FOR THE PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing instrument has been properly forwarded electronically to all relevant parties via this Court's CM/ECF Noticing System and/or email on March 4, 2026.

**Via CM/ECF**
ZACHARY L. RHINES
Special Counsel, Litigation Division
zachary.rhines@oag.texas.gov
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
COUNSEL FOR KEN PAXTON AND KELLY HANCOCK

**Via email to**: commissioner@tea.texas.gov
Mike Morath
Commissioner of the Texas Education Agency

/s/ *Mehdi Cherkaoui*
Mehdi Cherkaoui