# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **Mehdi Cherkaoui**, Individually and on behalf of his two minor children,<br><br>*Plaintiffs*,<br><br>v.<br><br>**Ken Paxton**, in his official capacity as Attorney General of Texas; **Kelly Hancock**, in his official capacity as Acting Comptroller of Public Accounts of the State of Texas, and **Mike Morath**, in his official capacity as Commissioner of Education of the State of Texas,<br><br>*Defendants*. | Civil Action No. 4:26-cv-1675 |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Page

Table of Authorities ...................................................................................................................iii

Introduction ............................................................................................................................... 1

Background ................................................................................................................................. 2

    I.  The Texas Education Freedom Account Program ............................................................. 2

    II.  School eligibility for the TEFA program ........................................................................... 2

    III. Student Application and selection for the TEFA program ................................................. 3

    IV. Factual background of the present dispute ......................................................................... 5

Legal Standard ........................................................................................................................... 6

Argument and Authorities ........................................................................................................ 7

    I.  Plaintiffs cannot show a likelihood of success on the merits. ........................................... 7

        A.  The Court lacks jurisdiction because Plaintiffs' claims are unripe. ............................ 8

        B.  The Court lacks jurisdiction because Plaintiffs do not have standing. ....................... 9

        C.  Plaintiffs' claims are barred by sovereign immunity. ................................................ 15

        D.  Plaintiffs have failed to plausibly state a claim for which relief can be granted ........... 17

    II.  The balance of the equities supports a denial of Plaintiffs' request for temporary injunctive relief. .......................................................................................................... 19

    III. Plaintiffs' requested relief is not redressable. ................................................................. 21

Prayer ...................................................................................................................................... 22

Certificate of Service .............................................................................................................. 23

Page

**Cases**

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
851 F.3d 507 (5th Cir. 2017) ................................................................ 17

*Anderson v. Jackson*,
556 F.3d 351 (5th Cir. 2009) .................................................................. 6

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ................................................................................ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 17

*Boating Indus. Ass'ns v. Marshall*,
601 F.2d 1376 (9th Cir. 1979) .............................................................. 13

*Brnovich v. Democratic Nat'l Comm.*,
594 U.S. 647 (2021) .............................................................................. 19

*Choice Inc. of Texas v. Greenstein*,
691 F.3d 710 (5th Cir. 2012) .................................................................. 8

*Clark v. Prichard*,
812 F.2d 991 (5th Cir. 1987) .................................................................. 7

*Commissioners Ct. v. Agan*,
940 S.W.2d 77 (Tex. 1997) .................................................................... 13

*DBSI/TRI IV Ltd. P'ship v. United States*,
465 F.3d 1031 (9th Cir. 2006) ................................................................ 8

*Doe v. Tex. Southern Univ.*,
2020 WL 8299811 (S.D. Tex. Dec. 21, 2020) ....................................... 16

*Ex parte Young*,
209 U.S. 123 (1908) .............................................................................. 17

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*,
415 U.S. 423 (1974) .............................................................................. 20

*Jackson v. Tarrant County, Tex.,*
158 F.4th 571 (5th Cir. 2025) ...........................................................7

*Jackson Women's Health Org. v. Currier,*
760 F.3d 448 (5th Cir. 2014) ...........................................................7

*Jeanty v. Big Bubba's Bail Bonds,*
72 F.4th 116 (5th Cir. 2023) ........................................................ 13

*Litton Sys., Inc. v. Sundstrand Corp.,*
750 F.2d 952 (Fed. Cir. 1984) .......................................................20

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ...........................................................10, 12

*Maryland v. King,*
567 U.S. 1301 (2012) ................................................................ 21

*Mi Familia Vota v. Ogg,*
105 F.4th 313 (5th Cir. 2024) ...................................................... 17

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
760 F.2d 618 (5th Cir. 1985) ...........................................................7

*Moore v. La. Bd. of Elementary & Secondary Educ.,*
743 F.3d 959 (5th Cir. 2014) ...................................................... 16

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*
508 U.S. 656 (1993) ....................................................... 10, 14, 15

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
833 F.2d 583 (5th Cir. 1987) .........................................................8, 9

*PCI Transp. Inc. v. Fort Worth & W. R.R. Co.,*
418 F.3d 535 (5th Cir. 2005) ...........................................................7

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984) .................................................................. 16

*Plotkin v. IP Axess Inc., Etc.,*
407 F.3d 690 (5th Cir. 2005) ....................................... 7, 17, 18, 19

*Quern v. Jordan,*
440 U.S. 332 (1979) ................................................................ 16

*Ramming v. United States,*
281 F. 3d 158 (5th Cir. 2001) ...................................................... 16

*Roark & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008) ................................................................................. 9

*Rowan Companies, Inc. v. Griffin,*
    876 F.2d 26 (5th Cir. 1989) ................................................................................. 8

*Shields v. Norton,*
    289 F.3d 862 (5th Cir. 2002) .............................................................................. 8

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) ........................................................................................... 15

*Simon v. E. Kentucky Welfare Rts. Org.,*
    426 U.S. 26 (1976) ............................................................................................. 13

*Smith v. Bayer Corp.,*
    564 U.S. 299 (2011) ........................................................................................... 22

*State Auto. Mut. Ins. Co. v. Quantum Machining, LLC,*
    No. SA-14-CA-720, 2015 WL 11669643 (W.D. Tex. Jan. 14, 2015) ........................................ 8

*Tanner Motor Livery, Ltd. v. Avis, Inc.,*
    316 F.2d 804 (9th Cir. 1963) .............................................................................. 20

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ............................................................................. 10, 11, 12, 14

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025) ..................................................................................... passim

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................................... 21

**Constitutional Provisions**

Tex. Const. art. IV, § 1 ........................................................................................... 19

**Statutes**

Tex. Educ. Code § 29.351–§ 29.374 ........................................................................... 2

Tex. Educ. Code § 29.352 .................................................................................. 2, 3, 20

Tex. Educ. Code § 29.355 ........................................................................................... 4

Tex. Educ. Code § 29.356 .............................................................................. 2, 4, 12, 15

Tex. Educ. Code § 29.357 ....................................................................................... 2, 4

Tex. Educ. Code § 29.358 ...............................................................................................passim

Tex. Educ. Code § 29.358 .......................................................................................................3

Tex. Educ. Code § 29.359. ......................................................................................................1

**Rules & Regulations**

34 Tex. Admin. Code § 16.403 ...............................................................................................4

34 Tex. Admin. Code § 16.407 ...............................................................................................5

**Legistlative History**

S.J. of Tex., 89th Leg., R.S., 1762 (2025) .........................................................................20

Sen. Comm. on Educ. K-16, Bill Analysis, Tex. S.B. 2, 89th Leg., R.S. (2025) ............................1

**Other Authorities**

Comptroller of Public Accounts, *Texas Education Freedom Accounts-Parent Application Guide* (Feb. 12, 2026), https://educationfreedom.texas.gov/wp-content/uploads/2026/02/TEFA-Parent-Application-Guide.pdf..........................................3

Letter from Kelly Hancock, Comptroller of Public Accounts, to Hon. Ken Paxton, Tex. At t'y Gen. (Dec. 12, 2025), https://www.texasattorneygeneral.gov/sites/default/files/re quest-files/request/2025/RQ0625KP.pdf ...................................................................6

*Next Steps for Texas Schools After the Parent Application,* (Feb. 28, 2026), https://support.withodyssey.com/hc/en-us/articles/46228498147995-Next-Steps-for-Texas-Schools-After-the-Parent-Application.......................................................................5

Off. of Tex. Comptroller, *Texas Education Freedom Accounts Pass 160,000 Applicants as March 17 Deadline Approaches* (Mar. 9, 2026), https://comptroller.texas.gov/about/media-center/news/20260309-texas-education-freedom-accounts-pass-160000-applicants-as-march-17-deadline-approaches-1773069814202 ...................................................................................................... passim

*TEFA Parent Application Walkthrough*, Odyssey, (Feb. 2026), https://support.withodyssey.com/hc/en-us/articles/46216828860955-TEFA-Parent-Application-Walkthrough ...........................................................................................5

Tex. Att'y Gen. Op. No. KP-0452 (2023) ..................................................................... 13

Tex. Att'y Gen. Op. No. KP-0509 (2026) ...................................................................6, 13, 14, 19

Plaintiffs Mehdi Cherkaoui, individually and on behalf of his two minor children (Plaintiffs), seek injunctive relief and a temporary restraining order based on a fundamental misunderstanding of both the facts and the law in this case. Despite their exaggerated portrayal of events, Plaintiffs' claims fail at the outset, and they have no chance of success on the merits as a matter of law.[1]

The Texas Education Freedom Account program (TEFA) was designed to give Texas parents more control over their children's education. *See* Sen. Comm. on Educ. K-16, Bill Analysis, Tex. S.B. 2, 89th Leg., R.S. (2025) (statement of intent). Instead of keeping Texas children in failing schools or schools that are otherwise not right for that child, the Legislature saw fit to permit funding for education to follow the individual child, and not the school. As a result, the TEFA funding account can be used to pay tuition at private schools. Tex. Educ. Code § 29.359(a)(1). This is the backdrop for the current dispute.

Mr. Cherkaoui is a practicing Muslim who wishes for his children to be taught at a Muslim school. ECF 8-1 at ¶¶ 2–5. He began to apply, on behalf of his children, for a chance to enter the state lottery for TEFA funding, but when he did, his school of choice did not appear in the drop-down menu on the website. ECF 8-1 at ¶ 17, 21. Based on that, as well as conversations with other parents at the desired school, Mr. Cherkaoui blindly assumed that his school of choice had been excluded from the TEFA program, and that the reason for its exclusion was that it was a Muslim school. ECF 8–1 at ¶ 25. Without doing any additional factfinding, he filed suit against the Acting Comptroller, the Attorney General, and the Texas Education Commissioner, and now asks the Court for a Temporary Restraining Order. ECF 1 at ¶¶ 20–22; ECF 8.

But Plaintiffs cannot succeed on the merits of their claims and therefore are not entitled to a temporary restraining order. This suit is dead-on-arrival for several reasons. *First,* the lawsuit is not ripe—Plaintiffs' alleged harm is entirely speculative and not certain to occur. *Second*, Plaintiffs lack standing. They have no vested right to any TEFA program funding at this time, nor have they

---

[1] In fact, this case should be dismissed for a myriad of reasons, and Defendants plan to file a motion to that effect in due time.

experienced an injury, and he cannot trace their alleged non-injury to two of the three defendants. *Third*, Plaintiffs' claims are entirely barred by sovereign immunity. And *fourth*, Plaintiffs have not stated a plausible claim for which relief can be granted, because they rely on demonstrably false conjecture.

Additionally, the balance of equities does not rest in Plaintiffs' favor. The balance of the equities does not support granting emergency relief to Plaintiffs when Plaintiffs' allegations are based entirely on conjecture and undermine a duly enacted state statute. And last, the Court cannot remedy Plaintiffs' claim. Plaintiffs attempt to bring a quasi-class action on behalf of all Muslim schools, without certifying a class as contemplated by *Trump v. CASA Inc.* The requested relief necessarily requires that this Court impermissibly grant relief to non-parties.

Consequently, as laid out below, Plaintiffs' request for a temporary restraining order should be DENIED.

## BACKGROUND

### I. The Texas Education Freedom Account Program

In 2025, the Texas Legislature established a new education program that allows parents to use state-funded Education Savings Accounts for, *inter alia*, private school tuition. Tex. Educ. Code §§ 29.351–.374. The "Education Savings Account Program," also known as the Texas Education Freedom Accounts program, allows the state to create state-funded, user-managed accounts for students to use for private school tuition, homeschools, or specialized education services. Tex. Educ. Code § 29.352. TEFA sets out two separate application tracks that must be completed and approved before funding is released: one for the schools and one for the students. *E.g., id.* §§ 29.356–.358.

### II. School eligibility for the TEFA program

*First*, schools and vendors must qualify to participate in the TEFA program. Under Texas Education Code section 29.358, the Comptroller is instructed to establish a process for the preapproval of education service providers and vendors of educational products for participation

in the TEFA program, and the Comptroller is instructed to allow for submission of applications on a rolling basis. *Id*. § 29.358(a). The Legislature established criteria that private school applicants for participation in the program must meet—specific accreditation requirements, *id*. § 29.358(b)(2)(A), annual administration of a nationally norm-referenced assessment, *id*. § 29.358(b)(2)(B), and continuous operation for at least two school years preceding the application, *id*. § 29.358(b)(2)(C). Additionally, the Comptroller may only approve providers located in the state and those for which eligibility for preapproval can be verified. *Id*. §§ 29.358(c)–(d). Finally, an education service provider may not participate in the TEFA program if it violates other relevant state or federal law or fails to meet the requirements of the subchapter. *Id*. § 29.358(h).

As required by the Legislature, and reflective of the various requirements that applicants must fulfill and the Comptroller must verify prior to approval, the Comptroller established an application window for schools for the 2026–2027 school year. Tex. Educ. Code § 29.352. Eligible accredited program applications are considered on a rolling basis. Tex. Educ. Code § 29.358(a). Consideration of these applications is still ongoing. Ex. 1 at 3. The final deadline for participating schools to confirm enrollment with the Comptroller is July 31, 2026.[2]

### III. Student Application and selection for the TEFA program

In addition to establishing a framework for approval of private schools eligible under TEFA, students must also meet the statutory requirements for TEFA funding. The child eligibility and application requirements are laid out in Texas Education Code sections 29.355, 29.356, and 29.357. A child is eligible to participate in the program if: (1) the child's parent establishes that the child is a citizen or national of the United States or was lawfully admitted into the United States; and (2) the child is eligible to either (a) attend a public school, including an open-enrollment charter school, under Education Code section 25.001, or (b) a free prekindergarten program offered by a public

---

[2] Comptroller of Public Accounts, *Texas Education Freedom Accounts-Parent Application Guide* at 6 (Feb. 12, 2026), https://educationfreedom.texas.gov/wp-content/uploads/2026/02/TEFA-Parent-Application-Guide.pdf.

school or open-enrollment charter school to certain children under Education Code section 29.153. Tex. Educ. Code §§ 29.355(a)(1)–(2).

To apply for the program, the child's parent must submit a Comptroller-approved application during the application period—from February 4, 2026, to March 17, 2026. *Id.* § 29.356(a) (authority to establish deadlines). Among other requirements, applications must include authorization to allow electronic verification of documentary proof of the child's eligibility status, residency, and total annual income. 34 Tex. Admin. Code §§ 16.403(b)(1)–(6) (Comptroller of Public Accounts, Program Participation)(2025). Additionally, to receive funding a participating parent must agree to: (1) request that program money be spent only for expenses allowed under section 29.359; (2) authorize the administrator of an assessment instrument to share the results of any assessment instrument required to be administered to the child; (3) refrain from selling items purchased with program money; and (4) provide written notification to the program if the child is no longer eligible to participate in the program. Tex. Educ. Code § 29.357(a).

Timely and properly filed applications do not guarantee funding because the Texas Legislature implemented a lottery system to select the students who will receive TEFA funds, prioritizing students with disabilities and those from low- to middle-income families. *See* Tex. Educ. Code §§ 29.356(b)(2)(A)–(D) (outlining priority within the lottery). Because of the lottery system, eligible applicants are not automatically warranted funds until official notification of lottery results in early April 2026. Ex. 1 at 1–2. On March 9, 2026, the Comptroller confirmed that the lottery system will be used to allocate funding to eligible families prioritizing "students with disabilities and students in low- and middle-income families."[3]

Finally, after being selected to participate in the program, parents have until July 15, 2026, to select schools for their children. Ex. 1 at 2. Upon finalization of school enrollment, the

---

[3] Off. of Tex. Comptroller, *Texas Education Freedom Accounts Pass 160,000 Applicants as March 17 Deadline Approaches* (Mar. 9, 2026), https://comptroller.texas.gov/about/media-center/news/20260309-texas-education-freedom-accounts-pass-160000-applicants-as-march-17-deadline-approaches-1773069814202.

Comptroller shall then make initial payments, for each participating child, to be deposited into an account established for that child. 34 Tex. Admin. Code § 16.407(c)(Comptroller of Public Accounts, Program Administration)(2025).

## IV.  Factual background of the present dispute

Plaintiff, Mehdi Cherkaoui, is an attorney that resides in Harris County, Texas, a practicing Muslim, and a member of the Muslim community in the Houston area. ECF 8-1 at ¶¶ 2–3. Mr. Cherkaoui's two minor children attend Houston Qur'an Academy Spring (HQA Spring), a full-time Islamic K–12 private school located in Harris County, Texas. ECF 8-1 at ¶ 5. Wanting to participate in the newly enacted TEFA program, Mr. Cherkaoui accessed the TEFA application portal on February 17, 2026. ECF 8-1 at ¶ 17. However, his children's school, HQA Spring, did not appear on the drop-down list on the website. ECF 8-1 at ¶ 21. To date, Plaintiffs have not yet completed TEFA applications for child participant approval. ECF 1 at ¶ 57. The Odyssey website includes a notice that the appearance of the status "Eligible" on the online application form "does not guarantee final approval or funding for the TEFA program."[4] The Odyssey website application portal for participants does not close until March 17, 2026. Ex. 1. at 1. The Odyssey website notes that parents will be able to change the private school their child wishes to attend at any point, even after the close of the application portal.[5] Based *only* on that discovery and conversations with other parents, Plaintiffs assume TEFA had denied all Muslim private school applications for the TEFA Program. ECF 8–1 at ¶ 25. Upon these assumptions, Plaintiffs filed suit against the Attorney General, the Commissioner of Public Education, and the Comptroller of Public Accounts on March 1, 2026. ECF 1 at ¶¶ 20–22. While it is not explicitly clear from the complaint, it appears

---

[4] *TEFA Parent Application Walkthrough*, Odyssey, (Feb. 2026), https://support.withodyssey.com/hc/en-us/articles/46216828860955-TEFA-Parent-Application-Walkthrough.

[5] *Next Steps for Texas Schools After the Parent Application,* (Feb. 28, 2026), https://support.withodyssey.com/hc/en-us/articles/46228498147995-Next-Steps-for-Texas-Schools-After-the-Parent-Application.

Plaintiffs believe that HQA Spring's application was denied. Based upon that belief, Plaintiffs filed suit seeking that the court "restore" HQA Spring to the list of approved schools. *See* ECF 1 at 27.

Plaintiffs' assumptions are premature because, as of March 10, 2026, HQA Spring's qualifications are still being reviewed, along with many other program applicants, to ensure full compliance with accreditation and that the school is not otherwise ineligible to participate in the TEFA program. Ex. 1 at 3. Further, the Comptroller has confirmed that "[f]amilies do not need to select a school when they apply, and more schools will join the program on a rolling basis."[6]

Separate from the dispute at hand, on December 12, 2025, the Acting Comptroller requested an opinion concerning eligibility to participate in the TEFA program.[7] On January 24, 2026, without resolving or commenting on any fact questions, the Attorney General issued an opinion confirming the statutory responsibility of the Comptroller to ensure that education service providers and vendors comply with the requirements of the Texas Education Code. Tex. Att'y Gen. Op. No. KP-0509 (2026) at 1 (the Opinion). The Opinion acknowledged that, under current law, no educational entity can lawfully provide material support to foreign terrorist organizations, such as cartels or transnational criminal organizations. *See id.* at 2. All schools, not just religious schools, are being evaluated for compliance with the law prior to approval for participation in the TEFA program. Ex. 1. at 4.

LEGAL STANDARD

Injunctive relief "'is an extraordinary and drastic remedy,' and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).

---

[6] Off. of Tex. Comptroller, *Texas Education Freedom Accounts Pass 160,000 Applicants as March 17 Deadline Approaches* (Mar. 9, 2026), https://comptroller.texas.gov/about/media-center/news/20260309-texas-education-freedom-accounts-pass-160000-applicants-as-march-17-deadline-approaches-1773069814202.

[7] *See* Letter from Kelly Hancock, Comptroller of Public Accounts, to Hon. Ken Paxton, Tex. Att'y Gen. at 1-2 (Dec. 12, 2025), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2025/RQ0625KP.pdf.

The party moving for a temporary restraining order must establish four elements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *See Jackson Women's Health Org. v. Currier,* 760 F.3d 448, 452 (5th Cir. 2014). "The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or a preliminary injunction can be granted." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *see also PCI Transp. Inc. v. Fort Worth & W. R.R. Co.,* 418 F.3d 535, 545 (5th Cir. 2005) (noting that the court should not grant preliminary injunctive relief "unless the party seeking it has clearly carried the burden of persuasion on all four requirements" (internal citations omitted)). However, even if a movant satisfies each requirement, the decision to grant an injunction remains within the discretion of the trial court, which should issue them only under exceptional circumstances. *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985).

### ARGUMENT AND AUTHORITIES

The Court should deny Plaintiffs' Motion for Temporary Restraining Order for the following reasons:

### I. Plaintiffs cannot show a likelihood of success on the merits.

The Fifth Circuit has previously observed that "[t]he first factor—likelihood of success on the merits—is 'the most important.'" *Jackson v. Tarrant County, Tex.,* 158 F.4th 571, 581 (5th Cir. 2025) (quoting *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024)). Plaintiffs' Complaint is rife with jurisdictional defects, inaccuracies, and "unwarranted factual inferences[,]" *Plotkin v. IP Axess Inc., Etc.*, 407 F.3d 690, 696 (5th Cir. 2005), and as a result, the Court should deny their application for a temporary restraining order.

7

**The Court lacks jurisdiction because Plaintiffs' claims are unripe.**

Plaintiffs' Complaint fails to present a justiciable case or controversy because Plaintiffs' claims are not yet ripe for judicial resolution. The Fifth Circuit has explained that "[a] controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Rowan Companies, Inc. v. Griffin,* 876 F.2d 26, 28 (5th Cir. 1989) (quoting *Brown & Root, Inc. v. Big Rock Corp.,* 3836 F.2d 662, 665 (5th Cir. 1967)). "Standing, mootness, and ripeness are jurisdictional issues that may be raised at any time." *DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1038 (9th Cir. 2006). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Because Plaintiffs' claims are not ripe for adjudication, the Court lacks jurisdiction, and the Complaint must be dismissed. Consequently Plaintiffs cannot establish a likelihood of success on the merits.

"Whether a case is ripe is a jurisdictional question which must be resolved as a preliminary matter." *State Auto. Mut. Ins. Co. v. Quantum Machining, LLC,* No. SA-14-CA-720, 2015 WL 11669643, at *6 (W.D. Tex. Jan. 14, 2015), *report and recommendation adopted*, No. SA-14-CV-00720-OLG, 2015 WL 11705274 (W.D. Tex. Feb. 9, 2015). "Ripeness is a constitutional prerequisite to the exercise of jurisdiction." *Shields v. Norton,* 289 F.3d 862, 835 (5th Cir. 2002) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967)). "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* (*NOPSI*), 833 F.2d 583, 586 (5th Cir. 1987)). "[A] case is not ripe if further factual development is required." *E.g., id.*; *NOPSI*, 833 F.2d at 587 (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581 (1985)).

Plaintiffs' claims in this case are not ripe for adjudication because additional contingent events must occur for Plaintiffs to establish any injury. They have not yet been denied any benefits under the TEFA program, and the deadline to apply for the program has not expired. ECF 1 at ¶ 57

(alleging that Mr. Cherkaoui has not actually completed a TEFA application). It is currently March 11, 2026, and participant applications for TEFA benefits are open until March 17, 2026. Ex. 1 at 1. As such, Plaintiffs still have over a week to complete the application to participate in program and be eligible for the lottery. Plaintiffs do not have to identify a school to qualify for the lottery.

Further, HQA Spring has not been denied TEFA program approval. Despite the allegations that HQA Spring has been excluded from TEFA, ECF 1 at ¶ 61, HQA Spring's qualifications are still being reviewed, along with other applicants, to ensure its full compliance with its accreditation. Ex. 1 at 3. The final deadline for parents to select schools is July 15, 2026. Ex. 1 at 2. HQA Spring has not been denied TEFA program approval, and Plaintiffs have until July 15, 2026, to select the children's school from those authorized to participate. Ex. 1 at 2–3. Until the deadline for HQA Spring to be approved has passed, it is premature to say HQA Spring has been denied.

"The 'basic rationale [behind the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008) (alteration in original) (quoting *Abbott Labs.*, 387 U.S. at 148). Because Plaintiffs' application deadlines have not passed and HQA Spring has not been denied program approval, Plaintiffs' claims are not ripe. *Cf. NOPSI,* 833 F.2d at 586 ("A district court should dismiss a case for lack of ripeness when the case is abstract of hypothetical." (citation modified)).

**B. The Court lacks jurisdiction because Plaintiffs do not have standing.**

Plaintiffs likewise do not have a substantial likelihood of success on the merits because Plaintiffs lacks standing. A plaintiff must allege the following three core elements in order to meet the "irreducible minimum" requirement of standing: (1) he has suffered or is about to suffer an "injury in fact" that is "concrete and particularized", and "actual or imminent"; (2) there must be "a causal relationship between the injury and the challenged conduct" that "fairly can be traced to the challenged action of the defendant"; and (3) "a likelihood that the injury will be redressed by a favorable decision." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*

*Fla.,* 508 U.S. 656, 663–64 (1993); s*ee also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)("[T]hey are not mere pleading requirements but rather an indispensable part of the plaintiff's case . . . .").

Plaintiffs lack standing to sue (1) because they have not suffered nor are they about to suffer an injury in fact, (2) they have failed to allege a bona fide injury traceable to either the Attorney General or the Commissioner; and (3) Plaintiffs' alleged injury is unlikely to be redressed by favorable ruling against any or all of the Defendants.

### 1. Plaintiffs have not shown a cognizable injury sufficient to convey standing.

Plaintiffs have not suffered nor are they about to suffer, a concrete and particularized, actual and imminent "injury in fact" that is not merely conjectural or hypothetical. *Ne. Fla. Chapter of Associated Gen. Contractors of Am.,* 508 U.S. at 663. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation modified). Plaintiffs' alleged injury, inability to direct TEFA funding to HQA Spring, at this time, is abstract and hypothetical, rather than concrete and imminent. *See id.* at 426 ("[Courts]" bear the "responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."). Three independent grounds demonstrate that Plaintiffs have not suffered a concrete harm sufficient to establish a case or controversy capable of invoking the subject-matter jurisdiction of this court.

*First*, Plaintiffs have not suffered any concrete injury because Mr. Cherkaoui has not actually completed a TEFA child participant application. ECF 1 at ¶ 57. It is currently March 11, 2026. Participant applications for TEFA benefits are open until March 17, 2026. Ex. 1 at 1. As such, to the extent his applications are incomplete, Mr. Cherkaoui still has just under one week to complete an application to participate in the program. Even assuming eligibility, a right to the disbursement of state-funds for an Education Savings Account can only arise after the submission of a program participant application. Mr. Cherkaoui's sworn declaration confirms that he has not

completed a TEFA application for either of his children and therefore any alleged injury predicated upon entitlement to TEFA funds is neither actual nor concrete. ECF 8-1 at ¶ 22.

Mr. Cherkaoui's contention that he is unable to submit an application for TEFA child participation until after HQA Spring's approval is factually and procedurally incorrect. "Families do not need to select a school when they apply" for TEFA child participation.[8] Instead, parents have until July 15, 2026, at the latest to select a participating private school. Ex. 1 at 2. Because the selection of a particular school is a downstream requirement, a particular school's absence from the dropdown menu does not prevent the submission of an application itself. Therefore, Mr. Cherkaoui remains fully capable of filing an application for TEFA child participation. However, if Mr. Cherkaoui chooses not to file an application, *see* ECF 8-1 ¶22 (declaring that he has not completed a TEFA application), his failure to file cannot be attributed to Defendants.

*Second*, Plaintiffs have not actually alleged facts showing that HQA Spring's application for program approval under the Education Savings Account Program has been denied. Rather, Mr. Cherkaoui has merely stated that "[w]hen [he] searched for Houston Qur'an Academy Spring in the TEFA school finder, HQA Spring did not appear on the list of approved schools" ECF 8-1 at ¶ 21. Indeed, Plaintiffs have failed to make any allegations regarding the pendency of an application for approved program status under TEFA for HQA Spring. *See infra* section I.D.I. Therefore, Plaintiffs' failure to plead facts regarding HQA Spring's application demonstrates a lack of concrete injury, or otherwise stated, any "personal stake" because unless HQA Spring applied and met the criteria for TEFA program approval, Plaintiffs **cannot** direct TEFA program funds to the school. *See TransUnion LLC,* 594 U.S. at 423; *see also id* at 430–31 ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing.").

---

[8] Off. of Tex. Comptroller, *Texas Education Freedom Accounts Pass 160,000 Applicants as March 17 Deadline Approaches* (Mar. 9, 2026), https://comptroller.texas.gov/about/media-center/news/20260309-texas-education-freedom-accounts-pass-160000-applicants-as-march-17-deadline-approaches-1773069814202.

*Finally*, even if Mr. Cherkaoui filed an application for his two children within the deadline, his children do not have a vested right to TEFA funds. Over 160,000 families have filed for participation in the TEFA-program, exceeding the allotted funds for the upcoming school year.[9] To address such a situation, the Texas Legislature has enacted a lottery system to select the students who will receive TEFA funds. *See* Tex. Educ. Code § 29.356(b). The application lottery prioritizes students with disabilities and those from low- to middle-income families. *See id.* §§ 29.356(b)(2)(A)–(D). A student that is not selected by the TEFA lottery system does not have a vested right to TEFA funds. So even if an application from HQA Spring were to be approved *and* Mr. Cherkaoui's children applied *and* were found to be eligible for the program, it is still not guaranteed that Plaintiffs would be entitled to TEFA funding absent being selected for participation in the lottery process. "[T]he risk of future harm on its own does not support Article III standing." *TransUnion LLC* 594 U.S. at 441; *see also Lujan*, 504 U.S. at 564 (citation modified) ("Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is 'certainly impending'"). Because Plaintiffs' alleged injury—an inability to direct funds to HQA Spring—is entirely reliant upon at the foregoing three intervening events—including a lottery system rewarding Plaintiffs with TEFA funding—Plaintiffs' alleged injuries are only hypothetical, and not concrete. In other words, "[n]o concrete harm, no standing." *TransUnion LLC,* 594 U.S. at 442.

**2. Any alleged injury is not traceable to either the Attorney General or the Commissioner.**

Plaintiffs also lack standing—and thus will not succeed on the merits of their claims as to two Defendants—because the alleged injury is not fairly traceable to any challenged actions of the Attorney General or the Commissioner. "[F]ederal plaintiffs must allege some threatened or actual

---

[9] Off. of Tex. Comptroller, *Texas Education Freedom Accounts Pass 160,000 Applicants as March 17 Deadline Approaches* (Mar. 9, 2026), https://comptroller.texas.gov/about/media-center/news/20260309-texas-education-freedom-accounts-pass-160000-applicants-as-march-17-deadline-approaches-1773069814202.

injury . . . that fairly can be traced to the challenged action of the defendant." *Simon v. E. Kentucky Welfare Rts. Org.,* 426 U.S. 26, 41 (1976). The traceability inquiry is vital because otherwise the Court cannot provide redress by ordering the defendant to alter its actions. *E.g., Boating Indus. Ass'ns v. Marshall,* 601 F.2d 1376, 1380 (9th Cir. 1979). Here, Plaintiffs have not alleged facts showing any alleged injury is fairly traceable to the Attorney General or the Commissioner.

Plaintiffs' alleged injuries are not fairly traceable to the statements or opinions issued by Attorney General Paxton. Their only factual allegations regarding the Attorney General's involvement in this dispute are the issuance of the Opinion. This, without more, does not establish that Plaintiffs' alleged injury can be traced to any action of the Attorney General. Attorney General opinions are persuasive interpretations of law, but the Office of the Attorney General has no authority to enforce its interpretation of law on other actors. *See Jeanty v. Big Bubba's Bail Bonds*, 72 F.4th 116, 121 (5th Cir. 2023) (citing *Holmes v. Morales,* 924 S.W.2d 920, 924 (Tex. 1996)) (acknowledging that Attorney General opinions are not binding interpretations of law); *Commissioners Ct. v. Agan*, 940 S.W.2d 77, 82 (Tex. 1997) ("While Attorney General's opinions are persuasive they are not controlling on the courts."). Further, fact questions lie beyond the reach of an Attorney General opinion. *See e.g.,* Tex. Att'y Gen. Op. No. KP-0509 (2026) at 1; Tex. Att'y Gen. Op. No. KP-0452 (2023) at 3. Indeed, the Opinion itself, KP-0509, contains language which expressly negates Plaintiffs' implied connection: "the open factual questions that lie at the heart of your request are to be resolved by the Comptroller's Office alone." Tex. Att'y Gen. Op. No. KP-0509 (2026) at 1; ECF 1-1 at 1 (same). Because the Attorney General has no role in determining applications under the statute, and its only allegedly relevant action is the issuance of a nonbinding opinion, Plaintiffs have not established a connection between its alleged injury and an action by the Attorney General. For these reasons, Plaintiffs have failed to demonstrate a likelihood of success on the merits on their claims against the Attorney General.

Similarly, Plaintiffs' alleged injuries are not fairly traceable to any conduct or action by the Commissioner. Neither Plaintiffs' complaint nor their motion for a temporary restraining order contains any reference to the Commissioner outside of the caption, identification of parties, and

signature block. ECF 1; ECF 8. Plaintiffs' failure to allege any facts whatsoever regarding the Commissioner is fatal to their burden of demonstrating a traceable connection between the Commissioner's action and Plaintiffs' alleged injury. *See TransUnion LLC,* 594 U.S. at 430–31. But even if Plaintiffs had attempted to allege facts in support of their claims against the Commissioner, they all would fail. As a matter of law, the Commissioner has no statutory responsibility or role in the Comptroller's approval of TEFA program applications for non-public schools and vendors. *See e.g.,* Tex. Educ. Code § 29.358 (outlining the Comptroller's role); Tex. Att'y Gen. Op. No. KP-0509 (2026) at 1 (acknowledging that it is the "Comptroller's Office alone" that may resolve "these factual determinations"). Because Plaintiffs have failed to allege any facts regarding any action by the Commissioner, and because the Commissioner has no relation to the alleged injuries as a matter of law, Plaintiffs' claims against the Commissioner are unlikely to succeed on the merits.

### 3. The Court cannot remedy Plaintiffs' alleged injury.

Plaintiffs cannot succeed on the merits because they lack standing for yet another reason; they have failed to demonstrate that the relief requested will redress their injury. *Ne. Fla. Chapter of Associated Gen. Contractors of Am.,* 508 U.S. at 663–64 (1993) ("A party seeking to invoke a federal court's jurisdiction must demonstrate . . . a likelihood that the injury will be redressed by a favorable decision, by which we mean that the 'prospect of obtaining relief from the injury as a result of a favorable ruling' is not 'too speculative . . . .'" (quoting *Allen v. Wright,* 468 U.S. 737, 752 (1992)). The Supreme Court expressly held in *Trump v. CASA, Inc.* that "the complete-relief principle" does not "justif[y] the award of relief to nonparties." 606 U.S. 831, 851 (2025). Indeed, "'[c]omplete relief' is not synonymous with 'universal relief'" and the Court's power extends only to granting complete relief amongst the parties. *Id.* Moreover, "to say that a court can award complete relief is not to say that it should do so. Complete relief is not a guarantee—it is the maximum a court can provide." *Id.* at 853–54. Here, Plaintiffs ultimately ask that the Court redress their injuries by ordering the Comptroller to alter the TEFA participation status of "Houston Qur'an Academy Spring and all other Cognia-accredited Islamic private schools," none of which

are parties to this case. ECF 1 at 27. This relief is flatly impermissible. Plaintiffs seek relief not to remedy their own injuries, but rather on behalf of an alleged injury to HQA Spring, which has a secondary effect upon Mr. Cherkaoui and his children. Of course, these schools are not parties to this case because these claims are not ripe because HQA Spring's application is still being processed. *See supra* section I.A. However, even if HQA Spring were denied the designation as an approved program, HQA Spring would have to bring its own claim for relief, not Plaintiffs. *See Sierra Club v. Morton,* 405 U.S. 727, 735 (1972) ("[T]he party seeking review [must] be himself among the injured."). Rather than "bother with a . . . class action," *CASA,* 606 U.S. at 850, Plaintiffs filed this lawsuit requesting relief on behalf HQA Spring and all other Muslim schools. Therefore, Plaintiffs have failed to demonstrate a likelihood that their injury may be redressable by a favorable decision.

Further, even assuming *arguendo* that relief that exclusively acts upon non-parties is permissible, Plaintiffs' alleged injuries would still not be capable of redress. Even if the Court *could* order that HQA Spring be designated an approved program, Mr. Cherkaoui would not be able to direct state funding to HQA Spring unless his children are selected for participation in the TEFA program through the lottery system. Tex. Educ. Code §§ 29.356(b)(2)(A)–(D). It is difficult to imagine a "prospect of obtaining relief" more "speculative" than one which depends upon a literal lottery system to become vested. *Ne. Fla. Chapter of Associated Gen. Contractors of Am.,* 508 U.S. at 663–64 (1993). Because Plaintiffs have failed to demonstrate a likelihood that a favorable ruling would redress their injury—directing lottery-allocated funds to HQA Spring— Plaintiffs have failed to meet an "irreducible minimum" "required by the Constitution" to invoke a federal court's jurisdiction. *See id.* For these reasons, Plaintiffs' claims must be dismissed for lack of jurisdiction and do not have a likelihood of success on the merits.

### C. Plaintiffs' claims are barred by sovereign immunity.

The Eleventh Amendment deprives federal courts of jurisdiction to hear suits against the State of Texas or its officials, regardless of the relief sought, unless sovereign immunity is expressly

waived. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 121 (1984). Neither Congress nor the State of Texas has voluntarily waived Texas's sovereign immunity for § 1983 claims. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Sovereign immunity extends to state officials who are sued in their official capacities. *Pennhurst*, 465 U.S. at 109 n.17 (state officials are entitled to sovereign immunity when they are sued to prevent "action that could be taken . . . only in their official capacity"). It is Plaintiffs' burden to prove jurisdiction exists, *Ramming v. United States*, 281 F. 3d 158, 161 (5th Cir. 2001), and he has not carried that burden for two reasons. *First*, Plaintiffs failed to plead a valid waiver of sovereign immunity for their claims. And *second*, even assuming they did plead a valid waiver of sovereign immunity, Plaintiffs have not shown that the Attorney General and the Commissioner are sufficiently connected to enforcement to overcome sovereign immunity.

As a general rule, "[f]ederal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless the State has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Defendants have not consented to this suit. Moreover, while Congress may, within limits, abrogate Eleventh Amendment immunity under the enforcement powers granted to it by the Fourteenth Amendment, "§ 1983 does not . . . indicate . . . an intent to sweep away the immunity of the States." *Quern*, 440 U.S. at 345. But Plaintiffs plead no such waiver. Instead, each of Plaintiffs' claims is brought under § 1983, with no mention of Defendants' sovereign immunity or how it may be abrogated. *See* ECF 1 a ¶¶ 73–114. And absent this, they cannot succeed on the merits of their claims. *See Doe v. Tex. Southern Univ.*, 2020 WL 8299811 at *1 (S.D. Tex. Dec. 21, 2020) (noting that a plaintiff cannot establish a likelihood of success without overcoming sovereign immunity).

Moreover, even if Plaintiffs had properly pled some waiver of sovereign immunity, there can be no doubt that their claims fail against both the Attorney General and the Commissioner. When attempting to overcome immunity, a plaintiff must name an official who has "sufficient connection [to] the enforcement" of the challenged statute. *Ex parte Young*, 209 U.S. 123, 157

(1908); *see also Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017); *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024). The requisite enforcement connection constitutes a high bar that only applies when "the official has a 'demonstrated willingness' to enforce the challenged statute" manifested in "some step to enforce the statute." *Ogg*, 105 F.4th at 329 (citation modified).

The TEFA program is administered solely by the Comptroller. Tex. Educ. Code § 29.358. Neither the Attorney General nor the Commissioner have any power to determine whether a school is approved for the TEFA program. *See id.* For that reason, in conjunction with standing defects related to traceability, Plaintiffs have not shown a sufficient connection to the enforcement of the statute, required to waive sovereign immunity, as it pertains to either the Attorney General or the Commissioner. *Ogg*, 105 F.4th at 329.

### D. Plaintiffs have failed to plausibly state a claim for which relief can be granted.

Plaintiffs similarly cannot succeed on the merits because they have not pled facts sufficient to state a claim upon which relief can be granted. To avoid dismissal under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin*, 407 F.3d at 696 (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

Plaintiffs have failed to adequately state a claim for three reasons. *First*, Plaintiffs have not pled facts showing that HQA Spring ever applied to be part of the TEFA program. *Second*, they have not pled facts adequate to show that HQA Spring has been excluded from the TEFA program, and that such an exclusion is based on HQA Spring's religious affiliation. And *third*, Plaintiffs rely heavily on the very "conclusory allegations, unwarranted factual inferences, [and] legal

conclusions" that the Fifth Circuit has explicitly stated that courts should not consider. *Plotkin*, 407 F.3d at 696.

**1.** Even under Plaintiffs' patchwork theory, they would need to show that HQA Spring applied for participation in the TEFA program. If HQA Spring has not, *none* of the Defendants could be the cause of Plaintiffs' alleged injury. But surprisingly, nowhere in their Complaint—or any other filing, for that matter—do Plaintiffs assert that HQA Spring ever applied to participate in the TEFA program. Without that crucial fact, Plaintiffs' chance of success on the merits is doomed. *See id*; *see also* ECF 1; ECF 8; ECF 8-1,

**2.** Similarly, Plaintiffs have not pled facts that would adequately show that HQA Spring has been denied participation in the TEFA program. Instead, Plaintiffs draw the ill-conceived conclusion that because HQA Spring "does not appear on the Comptroller's list of approved TEFA schools accessible through the TEFA portal[,]" HQA Spring has been excluded from the program. ECF 1 at ¶ 55.

Plaintiffs' speculative conclusion, that HQA Spring has been excluded from the TEFA program, is nothing but an "unwarranted factual inference" that the Court should not consider. *Plotkin*, 407 F.3d at 696. And of course, this inference is false. HQA Spring has *NOT* been denied participation in the program; it is still under consideration for eligibility along with countless other non-Muslim schools and vendors. Ex. 1 at 3.

**3.** Plaintiffs' entire complaint and subsequent motion for temporary injunction are littered with "conclusory allegations" and "unwarranted factual inferences" that this Court cannot consider. *Plotkin*, 407 F.3d at 696. As discussed above, the idea that the TEFA program is categorically closed off to schools associated with the Islamic faith is absurd and untrue. Nor has HQA Spring been denied the chance to participate in the program.

But these are not the only examples of Plaintiffs' unsupported theories. They have also concocted the baseless claim that the Acting Comptroller was somehow directed by the Attorney General to exclude Islamic schools. ECF 1 at ¶ 53; ECF 8 at 11; ECF 8-1 at 4. This theory is akin to the legislative "cat's paw" theory that has been expressly rejected by the Supreme Court. *Cf.*

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 689–90 (2021). Indeed, the Attorney General cannot control the actions of the Comptroller, or vice versa. Each are Constitutional officers of the State of Texas, Tex. Const. art. IV, § 1, and each is vested with authority to perform certain functions by the Texas Constitution and the Legislature.

Indeed, the Attorney General acknowledges as much; he stated in his Opinion that the Comptroller has the "exclusive duty of 'establish[ing]' and 'administer[ing]' the TEFA Program." Tex. Att'y Gen. Op. No. KP-0509 (2026) at 1. He continues by noting that he "has no greater statutory role in deciding who qualifies for the TEFA program than [he does] in dictating which private schools are accredited in Texas. Neither can [his] office decide unexplored fact questions, which lie beyond the reach of an attorney general opinion—as we have repeatedly and consistently emphasized." *Id.* In other words, the Opinion expressly disavows any determination regarding whether any school is eligible for the TEFA program because that decision is reserved solely for the Comptroller.

Rather, and despite Plaintiffs' misgivings, the Opinion merely restates the law accurately. It is undoubtedly true that schools are held to neutral requirements to receive approval to participate in the TEFA program. *See* Tex. Educ. Code § 29.358. Those neutral requirements include that the institution follow "other relevant law." *Id.* § 29.358(h)(2). And given the immense national security interests it cannot be disputed that "other relevant law" includes prohibition of funding or supporting terrorist or multinational criminal organizations. Nor is this particular provision targeted at the Islamic faith. It instead only applies to designated terrorist organizations and multinational criminal syndicates. Plaintiffs' conclusions are therefore entirely conclusory and unwarranted, and the Court cannot consider them when considering Plaintiffs' likelihood of success on the merits. *Plotkin*, 407 F.3d at 696.

II. **The balance of the equities supports a denial of Plaintiffs' request for temporary injunctive relief.**

Moreover, granting this temporary injunction would burden Texas more than is necessary to afford Plaintiffs complete relief or preserve the status quo. *CASA, Inc.,* 606 U.S. at 852 (quoting

19

*Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." (emphasis added in original)).

Plaintiffs' requested emergency injunctive relief would disrupt the status quo rather than preserve it. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439 (1974) ("[U]nder federal law [TROs] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm."); *see also e.g., Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984) ("The function of preliminary injunctive relief is to preserve the status quo pending a determination of the action on the merits." (citation omitted)); *Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 808–09 (9th Cir. 1963) (in a TRO proceeding, "it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial . . . [t]his is particularly true where the relief afforded, rather than preserving the status quo, completely changes it"). The TEFA Program is a newly enacted statute. S.J. of Tex., 89th Leg., R.S., 1762 (2025) (reporting that SB 2 was signed by the Governor on May 3, 2025). Under the statute, the Comptroller has been vested with a significant number of responsibilities to establish and administer the program. *See e.g.,* Tex. Educ. Code § 29.352. The 2026–2027 school year is the first year of implementation of the program; thus, no school has ever participated in the TEFA program prior to the passage of the statute. Indeed, the Comptroller has confirmed that more schools will join the program on a rolling basis, as applications are reviewed.[10] As such, the status quo would be irreparably disrupted rather than preserved by a court-ordered short-circuiting of the Comptroller's statutorily mandated thorough review of program applicants.

---

[10] Off. of Tex. Comptroller, *Texas Education Freedom Accounts Pass 160,000 Applicants as March 17 Deadline Approaches* (Mar. 9, 2026), https://comptroller.texas.gov/about/media-center/news/20260309-texas-education-freedom-accounts-pass-160000-applicants-as-march-17-deadline-approaches-1773069814202.

In addition to showing a likelihood of success on the merits, a plaintiff seeking preliminary injunctive relief must show "that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). An injunction that prevents the Comptroller from properly reviewing applications prior to approval will burden Texas. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). When compared to the irreparable harm the State of Texas will suffer if it is prevented from enforcing its laws, Plaintiffs' speculative injuries do not outweigh those of Defendants, especially considering the deadline to submit an application has not yet passed, and HQA Spring's application has not been denied. In light of Plaintiffs' low likelihood of success on the merits and allegations of only speculative harm, the balance of equities weighs against granting status quo-altering temporary injunctive relief.

## III.    Plaintiffs' requested relief is not redressable.

As articulated briefly above, Plaintiffs' requested relief is not redressable. *See supra* section I(B)(3). The Supreme Court's holding in *CASA* reinforced what should be a well-settled legal principle: that a court's power to enjoin begins and ends with the parties to the suit. 606 U.S. at 839–40, 851–53. *CASA* reaffirms the principle that the judicial power to grant relief extends only insofar as to provide complete relief to the parties, but it does not permit relief beyond the parties before it. Rather, "[t]he equitable tradition has long embraced the rule that courts generally 'may administer complete relief between the parties.'" *Id.* at 851 (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928)). Moreover, "to say that a court can award complete relief is not to say that it should do so. Complete relief is not a guarantee—it is the maximum a court can provide" and equity directs courts to grant less than complete relief to a plaintiff when a complete remedy would be impractical or when it would unnecessarily burden the other party. *Id.* at 853–54 (citing *Kieffer*, 277 U.S. at 507).

Plaintiffs request that the Court order the Comptroller to approve the program participation applications of "Houston Qur'an Academy Spring and all other Cognia-accredited Islamic private schools," none of which are parties to this case. ECF 1 at 27. Plaintiffs seek relief, not for their own injuries, but for the alleged injuries to HQA Spring. In *CASA,* the Court admonished parties attempting to "forg[e] a shortcut to relief that benefits parties and nonparties alike" that would "circumvent Rule 23's procedural protections and allow courts to create *de facto* class actions at will." 606 U.S. at 849 (citing *Smith v. Bayer Corp.,* 564 U.S. 299, 315 (2011)). This is precisely Plaintiffs' aim. Plaintiffs ask the court for relief applied to an entire class of schools "Cognia-accredited Islamic Private schools." ECF 1 at 27. In effect, Plaintiffs ask the Court to bypass Rule 23's class action requirements and grant relief to a quasi-class of schools without Plaintiff ever having to comply with Rule 23's class certification requirements. An exercise of judicial power in this manner would undermine the express language of *CASA*. Because the requested relief acts only upon nonparties, the requested relief exceeds the Court's authority.

## PRAYER

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' "Emergency" Motion for Temporary Restraining Order in its entirety and grant Defendants such other and further relief to which they may be justly entitled.

Dated: March 11, 2026

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division

*/s/ Zachary L. Rhines*
**ZACHARY L. RHINES**
Special Counsel
Texas State Bar No. 24116957
zachary.rhines@oag.texas.gov

**ALI M. THORBURN**
Special Counsel
Texas State Bar No. 24125064
ali.thorburn@oag.texas.gov

**GREY W. JOHNSTON**
Special Counsel
Texas State Bar No. 24149107
grey.johnston@oag.texas.gov

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

COUNSEL FOR STATE DEFENDANTS

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on March 11, 2026, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

MEHDI CHERKAOUI
Southern District of Texas ID No. 2101221
Texas Bar No. 24086077
CHERKAOUI & ASSOCIATES P.L.L.C.
700 Louisiana Street Suite 3950
Houston, TX 77002

Phone: 281-946-9466
Fax: 877-282-7874
mehdi@cherkaouilawfirm.com

COUNSEL FOR PLAINTIFFS

*/s/ Zachary L. Rhines*
**ZACHARY L. RHINES**
Special Counsel